**Deidre HANLEY, Tara Hanley and Ann Hanley, Appellants,**

v.

**Maura HANLEY, Individually and as Executrix of the Estate of Pierce Hanley, Deceased, Appellee.**

No. 05–89–01398–CV.

Court of Appeals of Texas, Dallas.

April 1, 1991.

Rehearing Overruled June 28, 1991.

---

Richard N. Countiss, Houston, Shirley Sutherland, Dallas, for appellants.

Clarence A. Guittard, John R. Guittard, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

## OPINION

THOMAS, Justice.

Deidre Hanley, Tara Hanley and Ann Hanley[1] appeal from the trial court's judgment striking their pleadings and assessing monetary sanctions against them for alleged discovery abuse. In six points of error appellants contend that: (1) the trial court abused its discretion by striking their pleadings; (2) the trial court abused its discretion by assessing $89,000 in monetary sanctions against them; (3) the sanctions imposed violated the Texas and United States constitutions; (4) the trial court erred by refusing to hear their motion for sanctions; (5) the trial court erred by rul-

---

1. Deidre, Tara and Ann will be referred to collectively as appellants unless it is necessary to identify them individually.

ing that they had no standing and thus could not participate in the case at the final hearing; and (6) the trial court erred by refusing to allow them to make bills of exceptions. We hold that the trial court abused its discretion by striking appellants' pleadings, dismissing their causes of action, and assessing $89,000 in monetary sanctions. Accordingly, we reverse the trial court's judgment, reinstate appellants' causes of action, and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

■ Pierce Hanley died in 1987 as a result of injuries he sustained when his vehicle was struck by an automobile driven by Idona Kemp. Appellee, Maura Hanley, Pierce's widow, sued Kemp and Kemp's employer, Telecommunications Marketing, Inc. Appellee's action was brought as executrix of Pierce's estate under the Survival Statute, *see* TEX.CIV.PRAC. & REM.CODE ANN. § 71.021, and as a rightful beneficiary under the Wrongful Death Statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.-001-.011. Deidre and Tara, Pierce's adult daughters, and Ann, Pierce's mother, intervened as plaintiffs in appellee's lawsuit. The wrongful death action was settled for $1.6 million, which sum Kemp and Telecommunications paid into the registry of the court. When appellants and appellee were unable to agree on a division of the settlement funds, they began preparations for a jury trial to determine what portion of the settlement each would receive. Prior to trial, the court found that appellants had abused the discovery process. Thereafter, an order was issued striking their pleadings, dismissing their claims with prejudice, and imposing monetary sanctions. The day the judgment was entered, the settlement funds were released to appellee. In a mandamus action, this Court ordered the trial court to vacate its disbursement order and to return the funds to the registry of the court.[2] Thereafter, the trial court attempt-

ed to require appellants to pay the sanctions and to post a supersedeas bond to cover the full amount of the trial court's judgment, including the $1.6 million being held in the registry of the court. Again, this Court was required to intervene and grant emergency relief. We approved the supersedeas bond previously posted, thereby allowing appellants to proceed while the district clerk retained the funds in the registry of the court.

## COMPLAINED-OF CONDUCT

During the course of this litigation, appellee changed attorneys. The discovery disputes involved in this appeal arose after appellee's new counsel, Lawrence Friedman, sent deposition notices to Shirley Sutherland, appellants' counsel. The notices scheduled oral depositions for appellants on April 17. Apparently an agreement was reached between the attorneys that appellants would appear for the depositions if Friedman would make specific witnesses available on the same date. This agreement was confirmed by letters between the attorneys. At the same time Sutherland attempted, without success, to obtain an agreement to have Ann's deposition taken in Scottsdale, Arizona, where Ann was at the time. Sutherland then informed Friedman that she had decided not to produce appellants for the April depositions and instead filed a motion for protective order on April 12. Sutherland's motion requested that Deidre's and Tara's depositions be quashed because they had already been deposed at length and no new evidence had developed; therefore, it was alleged that the second depositions were burdensome, harassing, and unnecessary. The motion further asked that Ann's deposition be postponed and moved to Falls Church, Virginia, the place of her residence, on the basis that she was elderly and unable to easily travel.

A hearing on Sutherland's motion and other related matters was held on April 19

2. This Court will take judicial notice of its own records between the same parties involving the same subject matter. *Garlington v. Wasson,* 279 S.W.2d 668, 679 (Tex.Civ.App.—Eastland 1955,

writ ref'd n.r.e.) (op. on motion for reh'g), *appeal dism'd w.o.j., cert. denied,* 352 U.S. 806, 979, 77 S.Ct. 38, 1 L.Ed.2d 38, 364 (1957).

before a visiting judge.[3] One order arising out of this hearing provided that all parties were to respond to the outstanding written discovery requests by April 21 and further extended the discovery cutoff deadline until the time of trial. A second order signed April 26 provided in relevant part:

IT IS FURTHER ORDERED that [appellants be produced] for deposition on May 1, 1989, at 10:00 a.m. in the offices of [Appellants' counsel].

IT IS FURTHER ORDERED that all counsel who attended the previous depositions of Deidre Hanley and Tara Hanley not repeat questions previously asked and answered, and shall only be entitled to examine the witnesses as to matters not previously covered.

IT IS FURTHER ORDERED that all counsel who did not attend the previous depositions of Deidre Hanley and Tara Hanley, or who reserved their right to question the witnesses at a future date not be limited in the scope of their inquiry.

Dealing first with Ann, it is undisputed that she did not appear for the court-ordered deposition scheduled for May 1. While the trial court's order cites a number of discovery abuses, it is apparent that the trial court struck Ann's pleadings solely because she failed to appear for the deposition. The following exchange in the opening minutes of the sanctions hearing demonstrates this point:

FRIEDMAN: The point is that there was a court order ... that required these three [appellants] to show up for deposition without filing a motion for protective order or a motion for reconsideration. Ann Hanley did not show up as ordered by the [c]ourt on the 1st of May. Also it was ordered that by—

THE COURT: The [c]ourt will strike her cause of action....

*   *   *   *   *   *

THE COURT: No, sir. I'm talking about Ann Hanley. By failing to appear at her deposition as ordered ..., the

[c]ourt deems it appropriate. Since she failed to appear at her deposition and did not seek protection, the [c]ourt rules it appropriate to strike the cause of—her pleadings and strike her cause of action, as to Ann Hanley.

Deidre and Tara did appear for their depositions at the designated time. During Deidre's deposition, which lasted approximately nine-and-one-half hours, Sutherland repeatedly objected to Friedman's questions. The primary dispute between the attorneys concerned the meaning of the April 26 written order and whether it correctly reflected the trial court's ruling. The following docket sheet notation was made by the visiting judge:

4/19/89 Motion for Protective Order— Granted if [appellee's] attorney did not *reserve* questions to time of trial. If he did, then [appellee's] new attorney has open right to depose. Otherwise limited to areas not covered by prior depo[sition]. Other parties' attorney limited to areas not covered in prior depo[sition].

(Emphasis in original.) It is undisputed that Deidre and Tara had been deposed once in connection with this litigation and that appellee's prior attorney attended those depositions. The record further reflects that he did not reserve the right to question Deidre or Tara. It is also undisputed that Friedman was not representing appellee at that time and, thus, was not involved in the first depositions. Friedman interpreted the written April 26 order as allowing him to question Deidre and Tara on all matters, including those covered at the previous depositions. Sutherland, on the other hand, maintained that the signed order was not in conformity with the visiting judge's ruling and that Friedman was limited to the areas not covered by the prior deposition. During one of several argumentative exchanges between the attorneys, the following statements were made:

FRIEDMAN: Are you going to allow your client to answer these questions[?]

---

3. The only actions relevant to this appeal involving a visiting judge were this April hearing, his docket sheet notation, and the subsequent entry of the written order. All actions complained of in this appeal are those of the presiding judge of this court.

SUTHERLAND: I will allow her to answer anything that's not been previously asked in other depositions.

FRIEDMAN: In other words, you're going to ignore the court's order.

SUTHERLAND: I'm going to ignore the order that you drafted, sir, that no other attorney at the hearing agreed with. Every other attorney agreed that you were only to go into new matters except you. You drafted the order incorrectly.

FRIEDMAN: Ms. Sutherland, are you going to abide by this [c]ourt's order or shall we adjourn this deposition?

SUTHERLAND: I'm not going to go by the order that you drafted.

FRIEDMAN: Are you going to abide by the order that [the visiting judge] signed?

SUTHERLAND: Not by the order you drafted, no sir, and neither are my clients.

Apparently this same conflict occurred during Tara's deposition. Because of Sutherland's insistence that her clients would not answer certain questions, Friedman decided to stop the depositions and to file a motion in order to obtain a ruling on what questions could be asked.

Friedman filed a pleading entitled motion to compel, to strike, for sanctions, and for citation for contempt. He contended that appellants had been guilty of dilatory tactics and abuse of the discovery process in that: (a) Ann did not appear for the deposition; (b) Deidre and Tara refused to cooperate and answer questions during their depositions; (c) the interrogatories were not properly answered; and (d) requested documents were not produced in response to the motion to produce and the subpoenas duces tecum attached to the deposition notices. The order imposing sanctions was based on appellee's third amended motion to compel, to strike, for sanctions, and for citation for contempt.[4] After the sanctions hearing, the trial court found that appellants had violated the Texas Rules of Civil Procedure and the orders of the court.

Having found that appellants had abused the discovery process, the trial court entered the sanctions order which forms the basis of this appeal.

## STANDARD OF REVIEW

A trial court may impose sanctions on any party that abuses the discovery process. TEX.R.CIV.P. 215. In reviewing a trial court's decision in the area of discovery, we are to use an "abuse of discretion" standard, and discovery sanctions will be set aside only upon a showing that the court "clearly" abused its discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990); *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986) (per curiam). The test is not whether an appellate court thinks that the facts presented an appropriate case for the trial court's action. Rather, the question on appeal is whether the trial court acted without reference to any guiding rules and principles. *Koslow's*, 796 S.W.2d at 704; *City of Dallas v. Cox*, 793 S.W.2d 701, 706 (Tex.App.— Dallas 1990, no writ). Another way to state the test is whether the act was arbitrary or unreasonable. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 222 (Tex.App.—Dallas 1989, writ denied). The fact that a trial court decided a matter within its discretionary authority in a way different from the manner in which an appellate court might rule under the same or similar circumstances does not establish that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Tate*, 767 S.W.2d at 222. In applying the abuse of discretion standard, the *Downer* court stated:

To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we must look to the Texas Rules of Civil Procedure as promulgated and amended by this court as well as the decisions of appellate courts of this State and of the United States.

---

4. Although styled "third" amended motion, it is merely a compilation of the previous motions.

Each motion complained of the same actions.

*Downer*, 701 S.W.2d at 242. Although an appellate court cannot substitute its judgment for the trial court's on a matter within its discretionary authority, the trial court's power to impose sanctions is not unlimited. *Ray v. Beene*, 721 S.W.2d 876, 879 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). A trial court's broad discretion is limited by the requirement that its order be "just" and that the sanction imposed be "specifically related to the harm done by the condemned conduct." *Ray*, 721 S.W.2d at 879.

### STRIKING THE PLEADINGS

In the first point, it is asserted that the trial court abused its discretion in striking the pleadings and subsequently dismissing with prejudice appellants' causes of action. Rule 215 authorizes the trial court to strike a party's pleadings for abuse of the discovery process. TEX.R.CIV.P. 215(2)(b)(5).[5] The options authorized by rule 215(2)(b)(5) are termed the "ultimate" or "extreme" sanctions. Orders imposing sanctions under rule 215(2)(b)(5) have been measured against the abuse of discretion standard in Texas in a myriad of cases in many fact situations. *See* Kilgarlin & Jackson, *Sanctions for Discovery Abuse Under New Rule 215*, 15 ST. MARY'S L.J. 767, 800–04 (1984). However, when dealing with "extreme" sanctions, a cursory review under the abuse of discretion standard has not in many instances cured the ills of discovery disputes, and may have in fact contributed to the problems. As has been pointed out:

> As long as trial courts and appellate courts are affirming death penalty cases on "abuse of discretion review" without careful analysis and articulation of requisite *de novo* review of erroneous application of essential legal standards, The Texas Lawyers Creed is rendered hollow.... With lawyers' duties imposed first to effective advocacy on the part of our clients, there is great pressure in Texas today to use Rambo tactics in discovery proceedings in order to prevail when there is no other way.

Soules & Marable, *Standard of Review In Discovery "Death Penalty" Cases* 6, Appellate Judges Session, Texas Judicial Section Annual Conference (September 26, 1990) (copy on file with the Texas Center for the Judiciary, Inc.).

Because we must be concerned that an interpretation of the Texas Rules of Civil Procedure affords parties due process as guaranteed not only by the Constitution of the State of Texas but also by the Constitution of the United States, we also look to federal courts for guidance in reviewing these actions. We know from *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), that a trial court has the authority to impose the ultimate sanction of dismissal or default where the noncompliance is due to willfulness, bad faith, or fault. In evaluating the discovery breaches in *National Hockey*, the U.S. Supreme Court characterized the actions as "flagrant bad faith" and "callous disregard of responsibilities counsel owes to the Court and their opponents." *National Hockey*, 427 U.S. at 640, 96 S.Ct. at 2780. *See also Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985) (where the drastic sanctions of dismissal or default are imposed, the range of the trial court's discretion is narrowed, and the losing party's noncompliance must be due to willfulness, fault, or bad faith). The *National Hockey* standard was thoroughly discussed and analyzed in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3rd Cir.1984). The *Poulis* court articulated six factors to be applied by the appellate court in reviewing whether the trial court abused its discretion in imposing "death penalty sanctions."

██ With that background, we too will be guided by the manner in which the trial court balanced the following factors and whether the record supports its findings: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to respond to

---

**5.** All further references to rules will be to the Texas Rules of Civil Procedure unless otherwise designated.

discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim. *See Poulis,* 747 F.2d at 868. We must weigh the above factors in order to assure that the "extreme" sanction of dismissal is reserved for the instances in which it is justly merited. *Poulis,* 747 F.2d at 870. Doubts should be resolved in favor of reaching a decision on the merits. *Scarborough v. Eubanks,* 747 F.2d 871, 878 (3rd Cir.1984).

### 1. *Extent of the parties' personal responsibility*

While there has been no allegation that someone other than appellants are responsible for the complained-of conduct, it is apparent that many of the actions complained about are actions that they took upon Sutherland's instructions. It is further apparent that the trial court became angry with Sutherland's interpretation of the court order and certain of her trial tactics. The trial court's reaction to Sutherland's position about the court order is demonstrated throughout the record. The trial court decided that sanctions would be assessed as soon as Friedman demonstrated that Sutherland had stated that "she was not going to abide by the order" because it did not accurately reflect the ruling. The following excerpts demonstrate the trial court's irritation with Sutherland's explanation and position:

> THE COURT: That's fine. But this [c]ourt will enforce any order of this [c]ourt even if it is rendered by a master or visiting judge until such order is reconsidered on a rehearing. And the [c]ourt is highly offended that some might disobey a court order and therefore should be sanctioned.
>
> Please continue.
>
> SUTHERLAND: I will file a motion to reconsider—
>
> THE COURT: No, ma'am. It's too late and therefore the [c]ourt will sanction you. Please continue.
>
> \* \* \* \* \* \*

> THE COURT: The [c]ourt's position is that if things were not covered and they were not answered, then that was not proper. But the [c]ourt expects all counsel to obey a [c]ourt order. And the [c]ourt gets angry if counsel states they're not going to.
>
> All right. Let's take up—the next problem is the interrogatories?

Finally, prior to ruling on the motion for sanctions, the trial court again inquired about Sutherland's statement that she was not going to abide by the court's order:

> THE COURT: [To Sutherland] Would you address the fact that you commented on the record that you did not intend to obey the [c]ourt's order?
>
> SUTHERLAND: No. Yes, ma'am. And my statement was I would not follow the order that Mr. Friedman had drafted because I felt he had misinterpreted, he had not accurately drafted the order, and I filed an affidavit from an attorney from my firm who attended that, who attended that deposition—I'm sorry, that hearing stating the same thing, that Mr. Friedman's order was not accurately drafted.
>
> I did not say or intend to say that I would not follow the [c]ourt's order. I did say that I would not follow what Mr. Friedman had drafted because I felt it was an inaccurate representation of what had taken place.
>
> THE COURT: Do you not agree that an order of the [c]ourt is an order of the [c]ourt until it is changed?
>
> SUTHERLAND: I absolutely agree.
>
> THE COURT: Then why did you make such a statement?
>
> \* \* \* \* \* \*

> THE COURT: Excuse me, Ms. Sutherland, but if the Judge signed the order, then I assume the Judge signed the order. My major concern is the fact that you stated you would not—I'd like to see the language again that you wouldn't follow the [c]ourt's order.

As to the trial court's displeasure about Sutherland's trial tactics, the trial court

*sua sponte*[6] stopped the sanctions hearing and engaged in the following exchange:

THE COURT: Excuse me. Before we proceed to do this, because we have subpoenaed these parties ... I'd like to know why we have them subpoenaed ... but I don't know why you subpoenaed the [appellee].

SUTHERLAND: I subpoenaed her because we have asked for her to sign employment records and medical records authorization allowing us to get copies of her records in order to present our case at trial. She's refused to sign those. I subpoenaed her here so that, should the [c]ourt order it, that she maybe could sign those so we can get those because Monday is our trial setting.

THE COURT: I know. But I think that's for harassment purposes.

SUTHERLAND: No.

FRIEDMAN: We do, Your Honor.

SUTHERLAND: Look at the—check the—

THE COURT: Excuse me, ma'am. But I was just curious why you subpoenaed her because normally that is something that her counsel would take care of. But I was just curious why you subpoenaed her to be here?

SUTHERLAND: I subpoenaed her to be here so that we could get documents that we needed from her because we've not been able over the last year-and-a-half to get documents.

\* \* \* \* \* \*

THE COURT: To me that would be only for harassment purposes.

SUTHERLAND: We were not trying to harass her.

THE COURT: I understand. But the [c]ourt will consider that as far as the sanctions. Thank you. Is there any other reason why you subpoenaed her, ma'am?

The trial court continued this exchange finally concluding that she had never seen this done before. When Sutherland pointed out to the court that her clients had been subpoenaed in connection with this litigation to appear at hearings when there was not a motion for contempt, the trial court indicated that the matter would be taken up whenever they reached Sutherland's motion for sanctions. Finally, the trial court provided a further indication of frustration and anger toward Sutherland by the following statements.

THE COURT: Also this [c]ourt's offended if there are frivolous motions filed because I don't like to inconvenience the parties ever. And it seems to me a waste of time unless there's a good reason. And there should be a good reason to subpoena the parties.

Although a client may not be able to avoid the consequences of the acts or omissions of its counsel,[7] it is clear in this case that the trial court's anger was primarily the result of Sutherland's statements and her decision to subpoena appellee to the hearing.

*2. Prejudice to the adversary*

█ If there has been true prejudice to a party by its adversary's failure to cooperate during discovery, that factor would bear substantial weight in support of a dismissal or default judgment. *Scarborough*, 747 F.2d at 876. Examples of such prejudice are the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party. *Scarborough*, 747 F.2d at 876. While appellee contended in the third amended motion that appellants' alleged discovery abuse denied her access to information that was necessary for proper trial preparation, prejudice is not established in this record, and the trial court did not make a finding of prejudice.

Discovery had been extended to the time of trial; thus, appellee could have obtained the answers and documents that she claimed were necessary to her preparation for trial once the objections had been over-

---

6. We note that appellee's attorney neither objected to nor complained about this procedure prior to the trial court's intervention *sua sponte.*

7. *See Poulis,* 747 F.2d at 868.

ruled. Nothing in the record suggests that the evidence had been irretrievably lost, that memories had dimmed, or that appellee had suffered excessive or irremediable burdens or costs as a result of the alleged misconduct. Also, nothing in the record refutes Sutherland's contentions that many of Friedman's deposition questions had already been asked and answered in the previous depositions. To the extent that the objected-to questions had been asked and answered, appellee already had the information being sought and thus suffered no prejudice. We note further that Friedman indicated during the sanctions hearing that appellee was ready to go to trial, even without the disputed discovery materials.

### 3. History of dilatoriness

As indicated previously, there was only one sanctions hearing in this case. In complaining of appellants' failure to attend the noticed deposition on April 17, 1989, there was a motion for protective order timely filed. Deidre and Tara appeared for the first depositions and appeared as ordered for the second depositions on May 1, 1989. As for Ann's failure to appear at the court-ordered depositions, we note that Sutherland continually offered to make her available for deposition so long as it was taken in a place more accessible to her. This request was based upon the assertion that Ann is elderly and unable to travel easily. Admittedly, the visiting judge rejected this argument and ordered her to appear in Dallas. It is important, however, to note that this is not a case where a party has made no attempt to be available for deposition.

Further, appellants delivered their responses to the interrogatories and requests for production of documents, as well as their objections, on the date ordered. Thus, this is not a case where appellee's discovery requests were never answered. Cf. Poulis, 747 F.2d at 868 (the plaintiffs neither answered interrogatories nor filed objections). The assertion of objections to appellee's discovery requests and deposition questions, although later overruled in large part by the trial court, does not nec-

essarily indicate an intent to delay discovery or a history of dilatoriness.

### 4. Whether the attorney's conduct was willful or in bad faith

Here, unlike *Poulis*, the trial court made no finding that Sutherland's conduct was willful or in bad faith. While we do not necessarily condone the discovery tactics employed in this matter, the record does not indicate that Sutherland's conduct went beyond good faith representation and efforts to protect her client's rights in this litigation.

### 5. Alternative sanctions

The trial court apparently determined that striking appellants' pleadings and imposing monetary sanctions were the only appropriate sanctions. Dismissal must be a sanction of last, not first, resort. *Poulis*, 747 F.2d at 869. The third amended motion prayed for alternative sanctions such as an order disallowing further discovery by appellants, citing them for contempt, and deeming designated matters admitted against them. Any of these alternative orders, alone or in combination, would have penalized, punished, and deterred abusive conduct while allowing the parties to proceed to a jury trial on the merits of this case. While discovery sanctions also serve to "deter those that might be tempted to abuse discovery in the absence of a deterrent," when extreme sanctions are imposed, there must be some willfulness, bad faith, or fault. *See* Soules & Marable, at 1; *see also City of Dallas v. Cox*, 793 S.W.2d 701, 709 (Tex.App.—Dallas 1990, no writ).

### 6. Meritoriousness of the claim or defense

A claim or defense will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by the plaintiff or would constitute a complete defense. *Poulis*, 747 F.2d at 870; *Scarborough*, 747 F.2d at 875. The meritoriousness of the claim for this purpose must be evaluated on the basis of the facial validity of the pleadings and not on summary judgment standards. *Scar-*

*borough,* 747 F.2d at 875. Deidre and Tara, as Pierce's children, and Ann, as Pierce's mother, are persons entitled to participate in a lawsuit to recover damages for Pierce's death. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.004. Had this case gone to trial, a factfinder would have been required to apportion the damages previously awarded among the individuals entitled to recover, *i.e.,* appellee and each appellant. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.010. Thus, appellants made out a facially valid claim.

### 7. Summary

■ In the present case, there is no indication that further discovery would not have given appellee access to the information she needed to prepare her case for trial, there was no history of dilatoriness, alternative sanctions were available, and appellants had facially valid claims. Further, there were allegations that appellee had engaged in some of the same conduct.[8] Appellants did not ignore appellee's discovery requests; they timely served the responses, lodging objections, and only Ann did not appear for the noticed depositions. We conclude that appellants' conduct was not so contumacious or flagrantly violative of the rules or the trial court's order as to warrant the extreme sanction of dismissal. *See Scarborough,* 747 F.2d at 878. Thus, we hold that the trial court abused its discretion by striking appellants' pleadings and dismissing their causes of action with prejudice. The first point is sustained.

### MONETARY SANCTIONS

■ As additional sanctions, the trial court ordered that Deidre and Tara pay to appellee the sum of $25,000 each. On appeal, they contend that this monetary sanction is "unsupported, unauthorized and irrational." Rule 215(2)(b) specifically authorizes a broad range of sanctions, and admittedly a monetary penalty is not among the listed options. However, a trial court is not limited to the laundry list of specifically

authorized sanctions. In fact, the rule was written to permit the trial court flexibility for creative resourcefulness. *See* Kilgarlin & Jackson, at 976–97. The limitation upon the trial court's power is that the order must be *just* under the circumstances.

■ We note that no specific prayer for $50,000 is made in the third amended motion. The only statements made regarding a request for monetary sanctions were:

> FRIEDMAN: In addition [to attorney's fees], because of all these numerous discovery abuses and Ms. Sutherland's specific recitation on the record that—in [Tara's] deposition that she is not going to abide by the order of this [c]ourt, we would ask that [Tara and Deidre] be sanctioned by the [c]ourt and ordered to pay sanctions in excess of $50,000 before they could proceed with any further proceedings in this case.

Nothing in the record shows any connection between the $50,000 awarded and any harm suffered by appellee as a result of the alleged discovery abuse. The record does not reflect that $50,000 was anything more than an arbitrary amount that was requested by Friedman and awarded by the trial court. Thus, we hold that the monetary sanction payable by Deidre and Tara to appellee is unsupported by the record and is unjust. Therefore, we conclude that the trial court acted without guiding rules and principles in ordering the $50,000 monetary sanction. In the event that this sum represents a reimbursement of expenses, it also fails because there is nothing in the record to establish appellee's expenses in obtaining the sanctions order other than attorney's fees. An examination of the provisions relating to recovery of expenses will be discussed below in connection with the complaint concerning the propriety of the attorney's fee award.

### ATTORNEY'S FEES

■ As indicated previously, each appellant was order to pay $13,000 in attorney's fees to Friedman & Associates, P.C.

---

8. The trial court's refusal to conduct a hearing on appellants' motion for sanctions is asserted

as a point of error in this appeal.

Generally, the winning party on a motion for sanctions is entitled to recover expenses, including attorney's fees. Because the Texas Supreme Court was trying to encourage parties to leave the trial courts out of discovery disputes unless absolutely necessary, there are a number of provisions allowing for the recovery of expenses. Rule 215(1)(d) provides in relevant part:

> d. *Disposition of Motion to Compel: Award of Expenses.* If the motion is granted, the court shall ... [require the disobedient party or attorney] to pay ... the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was *substantially justified or that other circumstances made an award of expenses unjust.*

(Emphasis added.) An order under this section must be "reasonable" and functions as a method to reimburse a party for the expenses incurred in obtaining the motion to compel. It is not designed to be used as a "penalty." In addition, the rule further provides for recovery of expenses under 215(2)(b)(2) and (2)(b)(8), which provide as follows:

> (2) An order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him;
> (8) In lieu of any of the forgoing orders or in addition thereto, the court shall require the [disobedient party or the attorney or both] to pay at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Rule 215(2)(b)(8) appears to be the most expansive because it allows for the recovery of more than merely the cost of obtaining the sanction order. It appears that any reasonable expense resulting from the delay caused by the other party's obstinance or from the fact that the discovering party was deprived of the needed information would be recoverable under this section. Even with all of this discretion, there is a requirement that there be some type of connection between the award and the discovery violations being addressed.

██ In this case, appellee requested in the third amended motion that the trial court award reasonable attorney's fees and costs in an amount of at least $3,500. There were no other specific amounts mentioned in the pleadings. At the hearing on the third amended motion, only the following references to attorney's fees were made:

THE COURT: [To Friedman] As far as the attorneys' fees, the [c]ourt is asking you how much time you spent to today as far as appropriate sanctions as far as considering all the conduct. How much time did you spend in having to file your motion and having them heard?.

FRIEDMAN: Okay. Move on to the next one.

THE COURT: Now how much time have you spent?

FRIEDMAN: With regard to this motion?

THE COURT: Yes.

FRIEDMAN: Your Honor, I think $3,500 would be a reasonable fee for the preparation, presentation, and hearing of this motion for sanctions.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Okay ... Yesterday I believe we had gone through interrogatories and requests for production. We also had a statement on the record that—

—Mr. Friedman, you spent approximately $3,500.00 in interrogatories and requests for production and filing of motions. And I believe you're almost finished but not quite concluded.

FRIEDMAN: Yes, Your Honor.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: [referring to Deidre's deposition]: How much was the cost of this deposition?

SUTHERLAND: It went nine hours, lasted two days.

FRIEDMAN: Your Honor, I would ask the [c]ourt—tell the [c]ourt that a reasonable fee would be an additional $3,500.00.

THE COURT: Okay, But how much was the court reporter's fees and how much was the attorney's fees?

FRIEDMAN: I can find out the court reporter's time. The deposition, we were there for nine-and-a-half hours.

\* \* \* \* \* \*

THE COURT: Excuse me. I understand. But, therefore, to me there was a lot of wasted time, which gets back to my initial inquiry as to how much time and expense was involved in taking the deposition, to [appellee], and at that time you said it was $3,500.00. The [c]ourt will consider that in considering the sanctions.

\* \* \* \* \* \*

FRIEDMAN: It has cost [appellee] in time and money and aggravation beyond anything that she could be compensated for. I would ask the [c]ourt to award $3,500.00 in attorneys' fees each for the motions pertaining to answering these interrogatories, for motions pertaining to answering the requests for production, and for motions pertaining to getting orders on [appellants'] refusal to answer questions and produce documents during the course of their deposition.

\* \* \* \* \* \*

Therefore, we would ask the [c]ourt to order—the [c]ourt award [appellee] $13,-500.00 in attorneys' fees pertaining to these motions; against [Deidre], $13,500 pertaining to these motions; against [Tara], and sanctions—as well as sanctions.

Appellee argues that the trial court is not required to hear evidence of attorney's fees as sanctions under its authority pursuant to rule 215 to "make such orders as are just." The trial court had before it the above statements concerning the attorney's fees. These references certainly do not support the trial court's award of $39,000 in attorney's fees. An award of attorney's fees in excess of what is shown to be reasonable is unjust and does not relate to the harm suffered as a result of the alleged abuse. Thus, such an award is not authorized by rule 215. We conclude that the trial court abused its discretion in ordering each appellant to pay $13,000 to Friedman & Associates, P.C., as attorney's fees. The second point is sustained.

## CONCLUSION

Although we have sustained the first and second points of error, this opinion should not be read as condoning the discovery tactics employed by or the statements made by appellants or their attorney. We do not determine whether the alleged conduct is sanctionable under rule 215; but rather we hold that under the facts of this case the trial court abused its discretion in imposing the complained-of sanctions. It is important to point out that the statement of facts reveals numerous instances where the trial court, rather than acting as a neutral trier of fact, favored appellee and failed to inquire into allegations by appellants that appellee had also committed discovery abuse. This alleged discovery abuse by appellee may have been relevant to mitigate appellants' conduct. On at least two occasions, the trial court raised issues *sua sponte* that favored appellee. The first was the issue of appellee being subpoenaed to appear for the sanctions hearing previously discussed. In this connection, we note that the trial court never inquired into the allegations that appellee had engaged in this same conduct. Further, during the course of the sanctions hearing, the trial court decided *sua sponte* that psychological examinations should be conducted on Deidre and Tara prior to trial. When Sutherland pointed out that appellee had not requested such relief and that there was no pending motion for psychological examinations, the trial court responded by instructing Friedman to file the appropriate motion and stated that an order would be signed as soon as the motion was filed. On numerous other occasions, the trial court would not allow Sutherland to argue her objections before ruling in appellee's favor.

Because of our disposition of points one and two, it is unnecessary to address the remaining contentions on appeal. We reverse the trial court's judgment, reinstate

appellants' causes of action, and remand the cause to the trial court for further proceedings consistent with this opinion.

WHITHAM, Justice, concurring.

I concur in the majority's opinion to the extent that we reverse the trial court's judgment, reinstate appellant's causes of action, and remand the cause to the trial court. I write to express my disagreement with the majority's articulation of six factors to be applied by the appellate court in reviewing whether the trial court abused its discretion in imposing "death penalty sanctions." Indeed, I see no reason to reach out to a federal appellate court for direction as does the majority by its reliance on *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3rd Cir.1984). I reason that our own Supreme Court has given us the law applicable to the present case. *See Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Hence, this court must apply that applicable law, and it is not our judicial function to write a separate test for abuse of discretion in these cases. We are bound by the pronouncements of the Texas Supreme Court on the law until the Court states to the contrary. *Jones v. Hutchinson County*, 615 S.W.2d 927, 933 (Tex.Civ.App.—Amarillo 1981, no writ).

I turn then to address the trial court's abuse of discretion as I understand the test given us by the Supreme Court. In my view, the sanctions imposed originate in a bitter dispute between attorneys over the drafting and contents of a court order. Furthermore, to my mind, the trial court's sanction to one attorney's distainful approach to that order went beyond official judicial disapproval and became a personal matter. Once the trial court's reaction became personal, the trial court acted without reference to any guiding rules and principles. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principals. *See Koslow's*, 796 S.W.2d at 704; *Downer*, 701 S.W.2d at 238. Therefore, I conclude that the trial court abused its discretion in the present case. Because the trial court abused its discretion under the test given us by the Supreme Court, I conclude that we must reverse the trial court's judgment, reinstate appellant's cause of action, and remand the cause to the trial court.