IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-278-CV





JOHN H. BIGGAR,



 APPELLANT


vs.





NATIONAL FIDELITY LIFE INSURANCE COMPANY,




 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 454,248, HONORABLE PETE LOWRY, JUDGE 



 




 National Fidelity Life Insurance Company ("National"), (1) as assignee of a real estate
lien note, sued the maker, John H. Biggar, to collect a deficiency remaining after foreclosure and
sale of the property securing the note. Biggar counterclaimed, alleging that National breached the
parties' agreement that in the event National foreclosed on the property, it would bid at the
foreclosure sale approximately seventy to seventy-five percent of the property's value as
determined by a current MAI (Member of the Appraisal Institute) appraisal.

 The foreclosure sale took place on Tuesday, March 1, 1988. National bid the
property in at $270,000, a sum Biggar admits is equal to seventy-five percent of the appraised
value of $360,000. National sued Biggar for $280,889, the amount of deficiency after interest
and cost of sale.

 Both parties agree that John Prather of Capital Foresight, Inc., appraised the
property, a warehouse located at 9517 Old McNeil Road in Austin, Texas. The appraisal was
oral, followed by a written appraisal report. Biggar contends that Prather performed the appraisal
after the sale and that an MAI neither performed nor supervised the appraisal, both in breach of
the agreement and resulting in a valuation far below the true market value of the property.

 The trial court granted a partial summary judgment on National's claim and the
case went to trial on Biggar's counterclaim. The trial court submitted nine questions to the jury,
the last eight premised on a "yes" answer to question number one, which asked:



 Do you find from a preponderance of the evidence that the defendants [National]
failed to obtain a current MAI appraisal before March 1, 1988?



The jury answered "no," and the trial court rendered judgment for National on the jury's verdict. 
Biggar appeals, raising two points of error challenging the factual sufficiency of the evidence and
the trial court's exclusion of expert testimony. We will affirm.



SUFFICIENCY OF THE EVIDENCE


 Biggar first challenges the factual sufficiency of the evidence to support the jury's
failure to find that National failed to obtain an MAI appraisal before the sale. Biggar asserts three
arguments in support of this point: (1) that Prather performed the appraisal after March 1, 1988,
the date of the foreclosure sale; (2) that the appraisal did not conform to the Uniform Standards
of Professional Practice; and (3) that the appraisal was not an MAI appraisal.

 The standard of review for failure to find on an issue on which the appellant had
the burden of proof is the same as that for an adverse finding on such an issue; the appellant
attacking the factual sufficiency of the evidence must demonstrate the failure to find is against the
great weight and preponderance of the evidence. See Cropper v. Caterpillar Tractor Co., 754
S.W.2d 646, 651 (Tex. 1988); Parrish v. Hunt, 331 S.W.2d 304 (Tex. 1960). In reviewing the
factual-sufficiency challenge, this Court must examine all the evidence in the record to determine
if there is some evidence to support the finding, if the finding is so contrary to the overwhelming
weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the
great preponderance of the evidence supports its nonexistence. See Cropper, 754 S.W.2d at 651;
Pool v. Ford Motor Co., 715 S.W.2d 629, 633-35 (Tex. 1986); In re King's Estate, 244 S.W.2d
660, 661 (Tex. 1951); see generally W. Wendell Hall, Standards of Appellate Review in Civil
Appeals, 21 St. Mary's L.J. 865, 909-10 (1990); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 366-68 (1960). 

 Having reviewed the record, we find the jury's answer is not contrary to the
overwhelming weight of the evidence. Biggar argues first that Prather did not perform the
appraisal before the sale on March 1, 1988. Prather testified that, as part of the appraisal, he
photographed Biggar's property. Biggar contends that the appraisal could not have been
accomplished until after the sale because one of Prather's photographs shows a Sendero Real
Estate sign in front of the building. Biggar claims Sendero did not begin to manage the building
until after the foreclosure sale, and thus this photograph proves Prather neither took the photo nor
appraised the property until after March 1, 1988.

 However, Joseph Maverick, head of National's commercial lending department at
the time of Biggar's loan, testified that approximately a week or two before the sale he instructed
another National employee, Dan Davidson, "to line up a management company and a leasing
company to be in place and to go ahead and at least review a draft copy of a management leasing
agreement so that after the foreclosure, the very next day, he could sign such an agreement and
move forward to try and obtain tenants and try to minimize our loss . . . ." Thus there was
evidence that National contacted Sendero before the sale even though the management lease rental
agreement was not effective until March 1, 1988.

 Maverick testified further that during the first week of February he instructed
Davidson to alert the appraisal firm to the possibility of a foreclosure on the first day of March. 
At that time, the foreclosure depended on Biggar's decision on a loan modification. Prather
testified that Davidson told him the second or third week of February to "gear up" for a
foreclosure similar to one Prather had performed for National six months earlier. Prather began
preliminary appraisal research.

 Toward the middle of the last week of February, Maverick told Davidson to
perform the appraisal. Prather testified that between 8:00 and 8:30 a.m. on Friday, February 26,
1988, Davidson called him to request an appraisal of Biggar's property, and that he appraised the
property that same day. All parties testified they understood this request to be for an MAI
appraisal. Both Corey, owner of Capital Foresight, and Prather testified that Prather called
Davidson with the appraisal late in the day on February 26th. Prather testified that an appraisal
on this particular property could be completed in one day because an existing computer data bank
of comparable property permitted immediate familiarity with the market. 

 Biggar next argues that the appraisal did not conform to certain professional
standards set out in the appraiser's Uniform Standards of Professional Practice manual. He argues
that Prather's file was not sufficiently documented and that Corey did not personally verify
information on comparables. However, Biggar directs us to no evidence that strict adherence to
these standards is required for an MAI appraisal.

 In fact, what constitutes an MAI appraisal was the principal issue at trial. Biggar's
third argument on appeal is that Prather's appraisal did not constitute an MAI appraisal. The
Uniform Standards of Professional Practice manual defines an appraisal as "the act or practice of
estimating value." Three experts testified as to what constitutes an MAI appraisal. W.F. Smith
testified that, in order to constitute an MAI appraisal, the MAI should either personally inspect
the property or disclose to the client that this was not done. Thomas Gardner testified that if an
MAI reviews and approves an estimate, opinion, or appraisal of value by his staff, that would in
essence constitute an MAI appraisal. Gardner could not say Prather's appraisal was not an MAI
appraisal. Corey testified that an MAI appraisal is one supervised and reviewed by an MAI and
on which the MAI expresses his opinion as to whether or not the estimated value is correct. 
Corey testified that Prather's appraisal was an MAI appraisal. All the experts agreed that an MAI
appraisal may be oral. 

 As a part of the appraisal of Biggar's property, Prather viewed the property, took
pictures of it, measured the outside, peered through windows of the unleased portion to determine
how the warehouse was finished, and went inside the leased portion. Prather is not an MAI, but
after he returned to the office, Prather spent one to two hours consulting with Ed Corey, who is
an MAI. Corey testified that he worked with Prather off and on throughout the day. He reviewed
the information Prather gathered at the site as well as occupancy rates, rent levels, lease
provisions, expenses, and comparable sales. Corey and Prather developed a cash-flow model and
discussed valuation. Late in the day Corey and Prather agreed on a value and Corey authorized
Prather to call National with the appraisal value. 

 Biggar devotes much of his argument on appeal to Corey's credibility, the weight
to be given his testimony, and inconsistencies in testimony given by Corey and Prather. These
considerations are the exclusive province of the jury. See Benoit v. Wilson, 239 S.W.2d 792, 796
(Tex. 1951).

 We conclude the jury's refusal to find that National failed to obtain a current MAI
appraisal before March 1, 1988, was not against the great weight and preponderance of the
evidence. Therefore, we overrule Biggar's first point of error.



EXCLUSION OF EXPERT TESTIMONY


 Biggar argues in his second point of error that the trial court erred in excluding a
portion of the testimony of Biggar's expert witness, W.F. Smith. During Smith's examination
at trial, Biggar's attorney asked Smith to give his expert opinion as to whether Prather's written
report qualified as an MAI appraisal. National objected and the trial court sustained the objection
and excluded Smith's response. 

 Biggar argues that Smith was entitled to testify about this critical issue because
Biggar identified Smith as an expert witness in supplemental answers to interrogatories served on
National June 22, 1990. In that supplemental answer, Biggar advised National that Smith would
"give his opinion that the Capitol [sic] Foresight, Inc., verbal and written appraisals on the
property in question prior to foreclosure do not qualify as a `current M.A.I. appraisal.'" We find
this argument unpersuasive in light of the fact that National deposed Smith on July 6, 1990, after Biggar served National with the supplemental answer. During his deposition, Smith
testified that he had not been asked by Biggar to review or comment on Prather's appraisal and
he agreed to notify National if Biggar later requested that he review, critique or comment upon
the appraisal. Smith never notified National, and Biggar never supplemented his answers to
interrogatories. In effect, Smith's response rendered the interrogatory answer no longer complete
and, under the circumstances, misleading.

 A party has a duty to supplement discovery responses when he obtains information
on the basis of which "he knows the response though correct and complete when made is no
longer true and complete and the circumstances are such that failure to amend the answer is in
substance misleading." Tex. R. Civ. P. Ann. 166b(6)(a)(2) (Supp. 1992). A party who fails to
provide evidence in a supplemental response to a request for discovery when he is under a duty
to do so is not entitled to present that evidence at trial. See Tex. R. Civ. P. Ann. 215(5) (Supp.
1992). 

 The standard of review for the exclusion of evidence is whether the trial court
abused its discretion. Hanley v. Hanley, 813 S.W.2d 511, 516 (Tex. App. 1990, no writ); see
also Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex. 1986). The question to be
determined is whether the trial court's imposition of sanctions is arbitrary or unreasonable,
amounting to a clear abuse of discretion. Hanley, 813 S.W.2d at 516. Because rules 166b and
215 permit sanctions under the circumstances here, we find no abuse of discretion. 

 In any event, even if erroneous, the exclusion of Smith's testimony was harmless
for two reasons. First, in his bill of exception, Biggar failed to ask Smith the question to which
National had objected. Second, the testimony elicited in the bill was subsequently elicited in front
of the jury.

 We overrule Biggar's second point of error. Finding no error requiring reversal,
we affirm the trial court's judgment.



 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: August 12, 1992

[Do Not Publish]
1. National Fidelity Life Insurance Company and Lumbermen's Investment Corporation
(LIC) are both subsidiaries of Temple Inland and are sister companies to Temple Industries. 
To avoid confusion, both National and LIC will be referred to herein as "National."