In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-141 CV


____________________



WAL-MART STORES, INC., Appellant



V.



CLYDE CHRIST, Appellee






On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause No. 55747






OPINION


 Clyde Christ sued Wal-Mart Stores, Inc. for personal injuries sustained at the
Liberty Wal-Mart when a doll house fell on him. The trial court found discovery abuse
by Wal-Mart. Wal-Mart prevailed at trial, but the trial court ordered Wal-Mart to pay a
monetary sanction of $72,694.14. The two issues presented by Wal-Mart in this appeal
are stated as follows:

 1. Whether monetary sanctions are proper where the evidence regarding
discovery shows only a good faith error that resulted in late
production of a document. Stated another way, are discovery
sanctions allowed on essentially a strict liability basis for any good
faith error in responding to discovery, or are they properly imposed
only where the evidence shows some actual abuse of the discovery
process?


 2. Whether the actual sum of the monetary sanction was "unjust" under
the TransAmerican standard, where: (1) the base amount of attorney's
fees claimed was attributable more to Plaintiff's unsuccessful attempt
to get death penalty sanctions, rather than directly related to the actual
late production; (2) trebling that claimed base amount was arbitrary
and bore no direct relationship to the late production; and (3) the total
sum of $72,694.14 was an excessive sanction for late production of
a single piece of paper.


 Christ contends that the appeal is frivolous and requests sanctions. See Tex. R.
App. P. 45.

 The alleged accident occurred on January 4, 1997. Wal-Mart, on a yellow note
pad, generated a handwritten document, which stated, as follows: 

 1-4-97 10:10 pm


 Clyde Christ 

 Was pushing a shoping cart and something hit him in the side. There
was another customer present but don't know where she is.

 A Doll House was what had fell & hit him.

 

 Feeling pain in lower back & hip on left side.

 [telephone number omitted]

 [address omitted]

 Mt. Belview 77580

witness Sondra Lindley - friend.


 Will wait & see how he feels later instead of going to see a doctor
now.


 When asked to produce relevant documents, Wal-Mart did not produce this
document. (1) In response to a request for statements obtained from any person, Wal-Mart
replied, "None." Instead, it produced a document, which witnesses admitted appeared to
be written by the same person as the person who wrote on the yellow sheet, composed of
handwritten notations on a pre-printed form. That document stated, in pertinent part:

WAL-MART STORES, INC.

REPORT OF CUSTOMER INCIDENT


 . . . .


 MANAGEMENT MEMBER REPORTING INCIDENT: Harvey Guillory

 . . . .

 DATE OF INCIDENT: 1-4-97 TIME: 10:10 P.M.

 DATE INCIDENT REPORTED TO STORE:1-6-97 TIME: 8:30 A.M.

 REPORTED LOCATION OF INCIDENT: Toys dept.

 NAME OF ALLEGED INJURED PERSON: Clyde Christ

 . . . .

 NAME OF COMPANION: Sondra Lindley


 . . . .

 CUSTOMER(S) WHO MAY HAVE OBSERVED SOMETHING
RELATED TO INCIDENT:

 [left blank]


 . . . .

 ASSOCIATE(S) WHO MAY HAVE FACTS RELATING TO INCIDENT:

 [left blank]


 . . . .


 WHAT DID ALLEGED INJURED PERSON SAY HAPPENED:

 That he was pushing a shoping cart and something hit him in the side.


 OUR COMMENTS ON HOW INCIDENT OCCURRED:

 The customer may or may not have been injured for there was no-one but
friends & family members present in the area. The store was in a zone
defence at the time of injury and no associate was around nor was
merchandise found on floor.


 NATURE OF ALLEGED INJURY: Sore feeling in left lower back & hip.


 DID ALLEGED INJURED PERSON GO TO DOCTOR OR HOSPITAL?

 NO 


 . . . .


 DID ALLEGED INJURED PERSON MAKE ANY COMMENTS ABOUT
WHETHER HE/SHE WAS GOING TO SUE; OR WHETHER WAL-MART
SHOULD PAY THE MEDICAL BILLS; OR WHETHER WAL-MART
SHOULD COVER THE EXPENSES? NO 


 MANAGERS NAME: Harvey Guillory SIGNATURE: [signed "Harvey J.
Guillory"]


 INCIDENT REPORTED TO CMI: Christy TIME: 8:30 A.M.


 The reverse page of the incident report was not produced, either. (2) That page bore
a claim number, contained blank squares for photographs and a handwritten notation, later
shown to have been written by Wal-Mart store employee Sandra Hibbits, which stated,
"Customer did not show us the area where incident occurred. No boxes were found on
floor in dept." 

 Each subpoena duces tecum served on a Wal-Mart employee asked the deponent to
produce "Copy of incident report filed when Clyde Christ was injured as taken down on
a legal pad the date of the accident." Wal-Mart objected to the request, stating, "No
incident report on legal pad. See attached copy of Customer Incident Report." 

 At his September 14, 2000, deposition, Harvey Guillory testified that he did not
remember writing an incident report on a yellow pad. Christ persisted in his quest, asking
Wal-Mart to produce "copies of the incident report written on a yellow legal pad on
January 4, 1997, by Harvey Guillory, when Clyde Christ was injured at store #1186
located in Liberty, Texas." In its September 20, 2000, response to requests for
production, Wal-Mart replied, "No incident reports on yellow pad. See copy of Customer
Incident Report previously provided in this case." 

 Wal-Mart produced the yellow sheet on October 29, 2000, eight days before trial. 
Christ filed a motion for sanctions. At the sanctions hearing, Wal-Mart contended that the
store's file had been misplaced until a employee happened across it while preparing for
trial. 

 Wal-Mart employees Arthur Childress, Joel Berger, and Sandra Hibbits, as well as
Wal-Mart's former counsel, all submitted affidavits stating that they saw the yellow sheet
for the first time when Wal-Mart's counsel showed it to them individually on November
2, 2000. At the hearing, Wal-Mart employee Eva Psencik testified that she happened
across the Christ file while she was looking for safety meeting notes during preparation for
Christ's trial. The file was flat on the bottom of a hanging-file cabinet drawer. Incident
reports are kept in a separate cabinet. Psencik did not know how the file ended up in the
bottom of the drawer. Psencik also testified that her manager, Wanda Kern, had
telephoned her at another store in August or September of that year, asking if Psencik had
seen the Christ file. Psencik did not look for the file before her deposition. No
replacement file had been made. 

 Wanda Kern testified that she looked for the yellow sheet in August, but could not
locate Christ's file. She looked in the file cabinet where the file was later located by
Psencik, but did not notice the Christ file. Kern did not know how the file came to be at
the bottom of the drawer. Although she knew she could not locate the file, Kern
answered, "No incident report on legal pad," in response to the request for production of
the yellow sheet, because she did not personally have possession of the requested
document. 

 The trial court noted the significant distinctions between the facts stated in the report
and the sheet. As early as June 11, 1998, Wal-Mart had produced only the report and had
failed to acknowledge the existence of the yellow sheet, although it was in Wal-Mart's
possession. The folder could not have been in the file cabinet all that time, because the
cabinet had only been placed in the office around July 1999. Joel Berger, who was the
store manager when the initial discovery response was made in 1998, did not recall
anything about the case and could not explain why Wal-Mart said that there was no
statement. He stated he would not have looked for a separate piece of paper unless the
attorney asked him to search for it, as it was not his usual practice to retain the document
after the report had been prepared. 

 Christ could not locate Guillory in order to re-depose him about the discrepancies
between the report and the yellow sheet. The yellow sheet was created at the time of the
accident, but the report stated the accident was reported to the store two days later. The
yellow sheet noted that another customer had been present; the report stated only a
companion was present. The yellow sheet described the object that fell on Christ; the
report did not identify the object but stated that no merchandise was found on the floor. 
According to the yellow sheet, Christ was going to "wait and see" before deciding whether
to see a doctor; the report stated the customer did not go to the doctor.

 Wal-Mart argues that the evidence adduced at the hearing establishes that the late
production of the evidence in question was the result of a good faith error for which it
cannot be punished. The record supports the trial court's finding of discovery abuse. 
Wal-Mart failed to produce important evidence despite repeated discovery requests,
producing instead a contradictory document far more favorable to Wal-Mart. There was
no explanation for the initial failure to produce the yellow sheet. Later, Wal-Mart
continued to represent that its customer incident report was the only document in its
possession relevant to the discovery requests, although the people responsible for gathering
the evidence were aware that the store's file was missing. The trial court did not abuse its
discretion by ordering monetary sanctions. 

 Wal-Mart also contends that the monetary sanction is not related to the abuse and
is excessive. If the court finds a party is abusing the discovery process in resisting
discovery, or if a party fails to comply with proper discovery requests, the trial court may
make such orders as are just, including an order charging all or any portion of the
expenses of discovery or taxable court costs against the disobedient party. Tex. R. Civ.
P. 215.2(b)(2); 215.3. In addition, the trial court shall require the disobedient party to pay
the reasonable expenses, including attorney fees, caused by the failure, unless the court
finds that the failure was substantially justified or that other circumstances make an award
of expenses unjust. Tex. R. Civ. P. 215.2(b)(8); 215.3. A sanction imposed for discovery
abuse must bear a direct relationship to the offensive conduct and be no more severe than
necessary to satisfy its legitimate purpose. TransAmerican Natural Gas Corp. v. Powell,
811 S.W.2d 913, 917 (Tex. 1991). 

 Wal-Mart argues that the attorney fees attributable to Christ's attempt to obtain
death penalty sanctions do not bear a direct relationship to the discovery abuse. The
document in Wal-Mart's possession was specifically and repeatedly requested, yet Wal-Mart's agents did not timely produce it. The motion for sanctions and the hearings that
followed are the direct and foreseeable result of Wal-Mart's failure to produce a properly
requested document. An award of some attorney fees for counsel's efforts expended
obtaining sanctions is justified. However, only reasonable efforts to obtain sanctions
would bear a direct relationship to the discovery abuse. "An award of attorney's fees in
excess of what is shown to be reasonable is unjust and does not relate to the harm suffered
as a result of the alleged abuse." Hanley v. Hanley, 813 S.W.2d 511, 523 (Tex. App.--Dallas 1991, no writ). 

 Wal-Mart argues that ordering it to shoulder the entire cost of the depositions bears
no relation to the late production of a single piece of paper. Wal-Mart also argues that a
sanction that is treble the discovery expenses, costs, and attorneys fees, bears no
reasonable and direct relationship to the discovery abuse. We agree. 

 Christ's Counsel testified that the plaintiff's out-of-pocket discovery expenses, plus
a reasonable attorney fee for the discovery phase and the proceedings related to the
sanctions hearing, totaled $24,231.38. The trial court awarded sanctions in an amount
three times greater than the deposition expenses plus the combined value the plaintiff's
lawyers placed on their time expended in all of the discovery and sanctions proceedings. 
Although the record supports a finding of discovery abuse, this case does not involve a
party's flagrant bad faith or counsel's callous disregard for the responsibilities of
discovery. Wal-Mart voluntarily corrected its previous disobedience before trial, and
Christ had the evidence available to him at the trial, which he lost. Wal-Mart's conduct
in this case was not so egregious as to justify a monetary sanction three times greater than
all of the expenses and attorney fees even remotely attributable to its wrongful conduct. 
Because the sanction imposed in this case is more severe than necessary to satisfy its
legitimate purpose, we hold that the trial court abused its discretion in assessing a sanction
of $72,694.14. 

 Moreover, the base figure of $24,231.38 was not directly related to Wal-Mart's
conduct, because it included fees for counsel's preparation for deposition testimony
unrelated to the yellow sheet. Efforts expended obtaining information that has not been
wrongfully withheld lack the requisite correlation to the offensive conduct. See Felderhoff
v. Knauf, 828 S.W.2d 272, 274 (Tex. App.--Fort Worth 1992, writ denied).

 Issue one is overruled. Issue two is sustained. We reverse that part of the trial
court's judgment that orders that Clyde Christ have and recover from Wal-Mart Stores,
Inc., $72,694.14 for discovery sanctions. We affirm that part of the judgment that decrees
that Clyde Christ take nothing against Wal-Mart Stores, Inc., on his case-in-chief, and
adjudged court costs of $5,438.65 against Clyde Christ. The cause is remanded for a new
sanctions hearing. See Tex. R. App. P. 44.1(b), 43.2(d). Because we have found merit
to the appeal, Christ's request for sanctions is denied.

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.



 PER CURIAM 

Submitted on October 11, 2001

Opinion Delivered February 21, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. During the hearing, the attorneys referred to this document as the "yellow sheet."

2. Wal-Mart produced the reverse page on the day of the sanctions hearing.