**KOSLOW'S, Petitioner,**

v.

**Thomas S. MACKIE and Patsy B. Mackie, Respondents.**

**No. C–9060.**

Supreme Court of Texas.

Oct. 10, 1990.

Rehearing Overruled Nov. 7, 1990.

Bruce K. Watkins, Houston, for petitioner.

Robert N. Reeves, Dallas, for respondents.

## OPINION

RAY, Justice.

This is a suit on a sworn account. The trial court rendered judgment by default against defendants for their failure to participate in the preparation of a joint status report as ordered by the court and their failure to appear and show cause at the subsequent disposition hearing for their non-participation. The court of appeals reversed and rendered, holding the trial court had no authority to strike defendants' pleadings and render judgment by default and abused its discretion by its order. 774 S.W.2d 741. We hold that the trial court had authority under the rules of civil procedure to make its pretrial orders and to sanction disobedience by striking pleadings and rendering default judgment. Since defendants failed to show lack of notice or other circumstances making the ruling unjust, we further hold the trial court's order was not an abuse of discretion. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Uncontested verified business records and admissions in defendants' pleadings establish the basic facts. Thomas S. Mackie and wife Patsy B. Mackie contracted to purchase a Russian lynx coat from Koslow's. The purchase was first structured as a "layaway" transaction, with the Mackies having put $5,000 down. When the Mackies failed to pay the balance of the purchase price, Koslow's wrote the Mackies demanding payment because the "layaway" period had expired. The Mackies then made another payment and the transaction was changed to a credit purchase. Koslow's delivered the fur coat to the Mackies, but they did not make the additional payments, despite repeated requests.

Koslow's filed suit against the Mackies, primarily alleging a suit on a sworn account, for the unpaid portion (over $47,000) of the purchase price. The Mackies filed a pro se answer setting forth certain defenses, including principally that Koslow's had agreed the sale included a matching fur hat with personal monograms at no additional charge and that consideration had failed in whole or in part because of Koslow's breach.

By letter dated March 4, 1988, addressed to counsel for Koslow's and the Mackies, the trial judge informed the parties of certain procedures he required in his court. The form letter contained the salutation "Dear Counsel" and stated: "Prior to this case being set for trial ..., I am requesting you to meet to discuss the status of this case and submit to me a joint status report on or before April 15, 1988." The letter stated what should be included in the status report, including the nature of the claim and the defenses; the discovery contemplated; whether a jury would be requested; and whether settlement negotiations had occurred. The letter then stated: "Refusal to participate in the status conference or failure to file timely the joint status report will cause this case to be set for disposition hearing, at which time cause will have to be shown why dismissal, de-

fault, or other sanctions should not be imposed."

Counsel for Koslow's filed his proposed status report with the judge with a cover letter dated April 13, 1988, stating that he had attempted to contact the Mackies by telephone and by letter concerning the joint status report, but had received no response. He sent a copy of the letter certified mail to the Mackies. The letter further reminded the judge of the March 4 letter stating that failure to submit the status report would result in a disposition hearing.

The Mackies did not file a status report and did not respond in any way to either the trial court's letter or the letter copy from Koslow's counsel. On April 18, 1988, the trial judge sent the parties a letter stating that a disposition hearing as described in the prior letter would be held on April 27, 1988. At the disposition hearing on April 27, 1988, neither the Mackies nor anyone on their behalf appeared. At that hearing the judge signed an order striking the pleadings of the defendants. The same day the judge signed a default judgment against the Mackies granting the relief requested in Koslow's sworn pleadings.

The Mackies timely filed a motion for new trial. The unverified motion asserted that the Mackies had tried to participate in a pretrial status conference through an attorney but Koslow's counsel failed to return telephone calls. The motion further asserted that the Mackies did not receive notice of the disposition hearing until after the hearing.

Neither of the Mackies personally appeared at the hearing on the motion for new trial. They did appear through counsel and an employee of a company the Mackies own. The employee testified that he personally did not receive a copy of the disposition hearing notice until the day after the hearing. Under questioning by the court, however, the employee admitted that all incoming mail was copied. He admitted the fact that the company secretary did not deliver a copy to him until the day after the hearing did not necessarily mean the letter was received that day. He further admitted that he could not testify whether the Mackies had received the notice before the April 27, 1988 hearing.

The employee further testified that he had taken the pretrial conference letter that had come from the court to an attorney "somewhere around the Thursday or Friday of the week before April 15th," and that in his presence the attorney had telephoned the office of Koslow's counsel "who wasn't available, and left a message with his secretary and what the reason for the call was."

Koslow's trial counsel was placed under oath and testified to rebut the Mackies' employee's testimony. He testified that his office diligently maintained records of telephone calls and correspondence, and that the first time the named attorney contacted his office concerning the case was two o'clock on the afternoon of Friday, April 15—the day the joint status report was due. The attorney further testified that from his office records the message conveyed was "that he wanted to discuss the case, would I call him Monday." The legal assistant for Koslow's counsel had then informed the attorney that the pretrial joint status report was due that day and that the office had already forwarded its own status report to the judge. The attorney reportedly responded to the effect that it "wasn't that much to be concerned about" in terms of filing a timely joint status report. Koslow's attorney further testified that the same attorney apparently called his office the following week when he again was out. The message was the same import, that the attorney did not consider it that urgent a matter that needed to be addressed, but that they should talk about the joint status report.

Koslow's counsel testified he did not return the calls because before the motion for new trial, neither the attorney nor anyone from his office had appeared as attorney of record for the Mackies. He further testified:

> But more importantly the message being, not can we talk about making a motion to the Court or can we talk about leave to extend or can we talk settlement or

anything else, it was basically somewhat a lackadaisical attitude towards the Court's pretrial order. And I frankly saw no productive end to be obtained by discussing the matter further.

The Mackies called no witnesses in rebuttal. The trial court overruled the motion for new trial. The Mackies appealed the judgment.

The court of appeals concluded that the trial court did not have authority under rule 166 to order the parties to confer and submit a joint pretrial status report since that rule states "the court may in its discretion direct the attorneys for the parties and the parties or their duly authorized agents *to appear before it* for a conference." Tex.R.Civ.P. 166 (emphasis added). The court further reasoned that since rule 166 did not apply, the sanctions of rule 215 did not apply. The court of appeals further examined the local rules applying to pretrial conferences, Dallas Civil District Court Rules 1.11 and 1.12. The court concluded that since striking pleadings and rendering default judgment were not among the enumerated sanctions, the local rules did not authorize the trial court's actions.

■ The court of appeals erred in so narrowly confining the meaning of an appearance under rule 166. Rule 166 must be read in conjunction with rule 7 of the Rules of Judicial Administration for the construction of the terms "appear before it" or "appearance." Rule 7 of our administrative rules in relevant part provides:

A district or statutory county court judge shall:

(6) to the extent consistent with safeguarding the rights of litigants to the just processing of their causes, utilize methods to expedite the disposition of cases on the docket of the court, including

(b) the use of telephone *or mail in lieu of personal appearances* by at-

torneys for motion hearings, *pretrial conferences*, scheduling and the setting of trial dates; ...

Tex.R.Judicial Admin. 7 subd. a(6)(b) (emphasis added).

This rule of judicial administration expressly approves the use of a mail appearance instead of a personal appearance for pretrial conferences. *See Gulf Coast Investment Corp. v. NASA 1 Business Center*, 754 S.W.2d 152, 153 (Tex.1988). We find nothing in rule 166 that is repugnant to or inconsistent with the administrative rule. We hold that the power to require the parties to "appear before it" in rule 166 includes the express power to order appearance by written report filed by mail.

■ This express power obviously includes the power to order the parties through their attorneys (or through themselves if appearing pro se) to confer to narrow the issues for the written pretrial conference report. Rule 166(g) further provides that the court's pretrial directive may require the parties to address "Such other matters as may aid in the disposition of the action." Without the power to require appropriate action, the pretrial conference rule would be meaningless. Specifying the sanctions that may be imposed is appropriate to "aid in the disposition of the action" to compel the parties to obey the pretrial directive. We hold, therefore, that the trial court had power implicit under rule 166 to provide in his pretrial order that the refusal to participate in the status conference or the failure to file a timely joint status report would result in the cause's being "set for disposition hearing, at which time cause will have to be shown why *dismissal, default, or other sanctions* should not be imposed." (Emphasis added.)

■ The Mackies argue that as a matter of law striking pleadings and rendering default judgment are unjust, unfair and inappropriate [1] sanctions for disobeying a

---

**1.** Rules 13 and 215 subd. 3 were amended effective September 1, 1990, to state expressly that sanctions for filing bad faith pleadings and abuse of the discovery process must be "appropriate." Tex.R.Civ.P. 13, 215 subd. 3. We re-

gard these changes as codification consistent with the pre-existing standards for review of sanctions orders on appeal. A sanction ordered under rule 166 must likewise be "appropriate." The sanction for failure to obey an order must

pretrial order. We reject this argument. We have upheld a trial court's imposition of the ultimate sanction of striking pleadings and rendering judgment by default for the failure to produce deponents, designate experts and produce documents as ordered by the court. *Vasquez v. Chemical Exchange Indus., Inc.,* 721 S.W.2d 284 (Tex.1987). We have stated that the ultimate sanction of rendering default judgment is available to the trial court for a single instance of failure to attend depositions rescheduled by agreement, after non-appearance by a party at a deposition originally set by notice. *Plano Savings & Loan Ass'n v. Slavin,* 721 S.W.2d 282, 283, 284 (Tex.1986). We have expressly approved imposition of default judgment when the offending party files late and incomplete responses to discovery after the court has set deadlines, where the record fails to indicate any effort to comply with the court orders or any reason which would justify lack of diligence in responding. *Jarrett v. Warhola,* 695 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd). Multiple violations of the discovery rules and court orders relating to discovery may be a factor authorizing imposition of the default judgment sanction, even when the offending party offers justifications and excuses. *Medical Protective Co. v. Glanz,* 721 S.W.2d 382, 388 (Tex.App.—Corpus Christi 1986, writ ref'd). We hold that striking pleadings and rendering default judgment were sanctions available to the trial court for the failure to engage in an attorney or party conference and failure to submit a joint pretrial status report, as ordered by the court.

■ Imposing an available sanction is left to the sound discretion of the trial court. An appellate court will set aside the decision only on a showing of a clear abuse of discretion. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or equivalently, whether under all the circumstances of the particular case the

always be appropriate to the circumstances of the case.

trial court's action was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984). The circumstances of the case include the reasons offered *and proved* by the offending party or established as a matter of law on the record. It is an abuse of discretion for the trial court to impose sanctions when the defaulting party has inadequate notice or no notice of the sanctions hearing. *Plano Savings & Loan Ass'n v. Slavin,* 721 S.W.2d 282, 283, 284 (Tex.1986). The trial court abuses its discretion when it makes one party liable for expenses related to discovery abuse caused solely by another party's misconduct. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986).

■ Had the Mackies established either ground asserted in their motion for new trial—good faith attempt at compliance thwarted by opposing counsel, or lack of notice of the disposition hearing—the trial judge would have abused his discretion by allowing the sanctions to stand. But in this case the record did not establish inadequate notice through the court's own record. It was the Mackies' contention that they did not actually receive the notice until after the hearing. They offered no evidence to support that claim.

The evidence on the second ground of attempted compliance was contested. The trial court, as fact finder, heard the testimony and viewed the demeanor of the witnesses. In the written transcription of the testimony there are subtle consistencies in the testimony of Koslow's attorney and inconsistencies in the Mackies' proof. Under this evidence the trial court was entitled to find that the Mackies' attitude was one of willful disobedience or conscious indifference to the order.[2] Under this record, the Mackies have failed to establish an abuse of discretion.

2. The conclusion that disobeying the order was willful or consciously indifferent is sufficient to make the ultimate sanction of striking pleadings and rendering judgment by default appropriate.

Striking pleadings and default judgment were available sanctions for the trial court's pretrial directive issued under rule 166. The Mackies failed to establish an abuse of discretion in the court's imposition of those sanctions. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.