**ALTUS COMMUNICATIONS, INC., Appellant,**

v.

**MELTZER & MARTIN, INC., d/b/a Meltzer & Martin Public Relations, Appellees.**

No. 05–91–01011–CV.

Court of Appeals of Texas, Dallas.

March 31, 1992.

Monte M. Bond and Douglas P. Ray of Mankoff, Hill, Held & Goldburg, Dallas, for appellant.

Michael D. Donohue of Baskin & Novakov, Dallas, for appellees.

Before BAKER, KINKEADE and STEPHENS[1], JJ.

## OPINION

BAKER, Justice.

Altus Communications, Inc. contends the trial court erred by sanctioning Altus for discovery abuse. Altus claims the trial court abused its discretion by striking its answer and entering default judgment for Meltzer & Martin. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Meltzer & Martin sued Altus on a sworn account for public relations services, materials, and supplies. Altus answered with a general denial and a sworn denial. In its sworn denial, Altus denied the charges were just and true and challenged Meltzer's assertion of the fair market value of the services. Altus denied the charges were usual and customary for such services, materials, and supplies. Altus also denied receiving enough notice of Meltzer's claim before the lawsuit.

## PROCEDURAL HISTORY

Meltzer served Altus with interrogatories and requests for admissions. Altus admitted receiving invoices from Meltzer. Altus admitted ordering certain services and materials. However, Altus stated a

---

1. The Honorable Bill J. Stephens, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

dispute existed about the agreed cost and nature of the items. Altus identified three employees who had knowledge of facts about the case. They were Director E. Denton Jones, President Steve Bell, and Secretary Jane Keeling. Jones signed the budget estimate for the disputed services.

On September 28, 1990, Meltzer served Altus with a notice of intention to depose Jones, Bell, and Keeling, together with a subpoena duces tecum. The depositions were set for October 17 and rescheduled at Altus's counsel's request for October 25. On October 25, Altus's attorney again asked for rescheduling of the depositions. Meltzer agreed, and the parties rescheduled the depositions for October 30.

Jones, Bell, and Keeling did not appear on October 30. Meltzer had the court reporter prepare a certificate of nonappearance. Altus's attorney testified his office did call Altus. He testified that Altus informed him Keeling was sick. Altus also told him Jones was out of state and could not make it back for the deposition. The attorney gave no reason for Bell's nonappearance. The attorney promised to obtain deposition dates for his clients. Meltzer stated it would bill Altus for the costs of the nonappearance.

The parties rescheduled the depositions for December 5. Altus's attorney told Meltzer's attorney he could not guarantee his client's representatives would appear. Meltzer noticed the depositions for December 13. On December 12, Altus's attorney informed Meltzer he had a conflict with the depositions because he had to appear for trial on December 13. The parties agreed to reschedule the depositions for December 18. Altus's attorney again put off the depositions, which were reset for December 20.

On December 20, Bell and Keeling appeared, and Meltzer deposed them. Jones did not appear. Keeling said Jones was unable to attend because of a business conflict. Meltzer noticed Jones for January 9, 1991. Jones did not appear. On January 22, Meltzer moved for sanctions because of Jones's noncompliance with dep-

osition notices. The trial court set the hearing for February 1.

On February 1, before the hearing, counsel orally agreed the court could enter a default for Meltzer unless Altus satisfied two conditions. These conditions were that Altus pay Meltzer $1000 in attorney's fees and allow Meltzer to depose Jones by February 15. Additionally, they agreed to submit a proposed order incorporating these conditions to the court. Although we have no statement of facts, Meltzer apparently informed the court of this agreement at the sanctions hearing.

Altus's attorney never signed the agreed order. Altus did not pay the attorney's fees. Altus did not produce Jones for deposition. Meltzer again moved for sanctions.

On February 20, the trial court entered an order granting Meltzer's motion for sanctions. The court ordered that Altus could not introduce evidence opposing Meltzer's claims or introduce evidence supporting any of Altus's defenses. The court struck Altus's answer. The court ordered Altus to allow Meltzer to depose Jones. The court also ordered Altus to pay Meltzer $1200 in attorney's fees.

On March 4, Altus, with new counsel, moved for a continuance to allow the new attorney to familiarize himself with the lawsuit. Also, Altus moved to lift sanctions. On this same day Meltzer moved for a default judgment because of Altus's failure to obey the trial court's sanctions order. Altus did not pay the $1200 in attorney's fees.

The motion to lift sanctions alleged Altus did not learn of the agreement reached before the first sanctions hearing until March 1. Altus alleged it did not know of any of the events leading to the imposition of sanctions until March 1. When Altus learned of these events, it terminated its first attorney. Altus contended the sanctionable events occurred because its first attorney did not fulfill his obligations. It contended it did not know that Meltzer noticed Jones's deposition for January 9 or that it had to pay $1200 in attorney's fees

until March 1. The trial court denied Altus's motion to lift sanctions.

Meltzer moved for final default judgment because Altus did not comply with the sanctions order. The court heard all pending motions on March 7. The court denied Altus's motions. The court determined Altus was in contempt of the sanctions order. The court then entered final default judgment for Meltzer.

## DISCOVERY SANCTIONS

### 1. Standard of Review

■■■ A trial court may impose sanctions on any party who abuses the discovery process. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986) (per curiam); TEX.R.CIV.P. 215.[2] The trial court's imposition of discovery sanctions are within that court's discretion. An appellate court sets aside that decision only upon a showing of a clear abuse of discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990).

■■■ The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present a proper case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Stated otherwise, we determine whether the trial court's act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984). The mere fact that a trial judge may decide a matter within his discretionary authority differently from an appellate judge in a similar circumstance does not show that the trial court abused its discretion. *Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965).

To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we look to the rules as well as appellate decisions of this state and of the United States. *Downer*, 701 S.W.2d at 242.

### 2. The Guiding Rules and Principles

#### A. *The Rules*

If a party or an officer, director, or managing agent of a party, or a person designated to testify on behalf of a party, fails to comply with proper discovery requests or to obey an order to provide or permit discovery, the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others, the following:

(1) An order disallowing any further discovery of any kind or of a particular kind by the disobedient party;

(2) An order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him;

(3) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(4) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(5) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

(6) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(7) When a party has failed to comply with an order under Rule 167a(a) requiring him to appear or produce another for examination, such orders as are listed in paragraphs (1), (2), (3), (4) or (5) of this

---

**2.** All references to rules are to the Texas Rules of Civil Procedure unless otherwise stated.

subdivision, unless the person failing to comply shows that he is unable to appear or to produce such person for examination;

(8) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment.

Rule 215(2)(b)(1)–(8).

If the court finds a party is abusing the discovery process in seeking, making, or resisting discovery, or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for the purposes of delay, then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph (2)(b) of rule 215. Such order of sanctions shall be subject to review on appeal from the final judgment. Rule 215(3); *but see TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919–20 (Tex.1991).

### B. *The Purpose of Discovery Sanctions*

■ A trial court abuses its discretion if the sanction it imposes does not further one of the discovery sanctions' purposes. The purposes of discovery sanctions are to: (1) secure the parties' compliance with discovery rules; (2) deter other litigants from violating the discovery rules; and (3) punish parties who violate the discovery rules. *See Bodnow Corp.*, 721 S.W.2d at 840.

Rule 215 authorizes sanctions that prevent or inhibit a party's presentation of the merits of its claims. These sanctions include exclusion of essential evidence, striking pleadings, dismissal, and default. *See* rule 215, para. (2)(b)(3), (4), (5). The effect of these sanctions is to adjudicate claims or defenses—not on their merits—but on how a party or his attorney conducts discovery. *See Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991).

However, the trial court must reserve such sanctions for circumstances in which a party has so abused the procedural rules, despite imposition of lesser sanctions, that the court can presume the party's position lacks merit and it would be unjust to permit the party to present the substance of that position to the court. *See Braden*, 811 S.W.2d at 929.

### C. *The Principles*

■ The choice of sanctions is a matter for the trial court's sound discretion. Whatever sanctions the trial court imposes must be just under the circumstances. *See TransAmerican*, 811 S.W.2d at 917. In deciding to impose sanctions, the trial court has the authority and the responsibility to review all of the evidence before it. We presume the trial court is familiar with the entire record of the case up to and including the motion the trial court is considering. *Downer*, 701 S.W.2d at 241. Circumstances of the case include the reasons offered and proved by the offending party or established as a matter of law on the record. *Koslow's*, 796 S.W.2d at 704.

We measure whether the trial court's imposition of sanctions is just by two standards:

(1) A direct relationship must exist between the offensive conduct and the sanction imposed.

(a) This means a court must direct the sanction against the abuse and toward remedying the prejudice caused the innocent party.

(b) The sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.

(2) Just sanctions must not be excessive.

(a) A sanction imposed for discovery abuse should be no more severe than

necessary to satisfy its legitimate purposes.

(b) Courts must consider the availability of less stringent sanctions and whether those lesser sanctions would fully promote compliance.

These standards set the bounds of permissible sanctions under rule 215 within which the trial court is to exercise sound discretion. *See TransAmerican,* 811 S.W.2d at 917.

█ These standards and constitutional due process limit the trial court's ability to impose very severe sanctions. *TransAmerican,* 811 S.W.2d at 917. In assessing sanctions, the trial court must guide its discretion by a reasoned analysis of the purposes sanctions serve and the means of accomplishing these purposes. *TransAmerican,* 811 S.W.2d at 917 n. 6. The Supreme Court of Texas does not specify guidelines for a trial court to follow when assessing sanctions. However, in *TransAmerican,* the concurring opinion suggests the American Bar Association Litigation Section's standards and guidelines are appropriate for the trial court to consider when assessing sanctions under rule 215. *See TransAmerican,* 811 S.W.2d at 920–22 (Gonzales, J., concurring); American Bar Association, Standards and Guidelines for Practice under Rule 11 of the Federal Rules of Civil Procedure, *reprinted in* 121 F.R.D. 101, 127–28 (1988); *see also Hanley v. Hanley,* 813 S.W.2d 511, 517–18 (Tex. App.—Dallas 1991, no writ).

Rule 215 does not require a trial court to make findings before imposing discovery sanctions. When a trial court imposes severe sanctions, it would be helpful for appellate review to have the benefit of the trial court's findings about the conduct it considered to merit sanctions. *See TransAmerican,* 811 S.W.2d at 919 n. 9.

### APPLICATION OF THE LAW TO THE FACTS

The record reflects in late September 1990, Meltzer noticed Altus for oral depositions of two officers and one director for October 17. On October 16 Altus requested an extension until October 25. Meltzer agreed to the request provided Altus produced the documents Meltzer sought by October 17. Altus did not produce the documents. On October 25, the next agreed setting for depositions, Altus requested another extension for the three officers to October 30. Altus also agreed to produce the documents Meltzer requested on October 26. Altus did not produce the documents.

On October 30, Altus did not produce its three officers. Altus's counsel informed Meltzer's counsel Keeling was ill and Jones was out of town. Altus did not offer an explanation for Bell's nonappearance. Altus next agreed to produce the three individuals for depositions on December 5. However, on December 3 Altus's counsel told Meltzer's counsel he could not assure the appearances. Meltzer noticed the three depositions for December 13. On December 12 Altus's counsel informed Meltzer's counsel of another conflict and requested another extension. By agreement, the parties rescheduled the depositions for December 18.

The sixth extension was from December 18 to December 20 because of Meltzer's counsel's illness. On December 20, Keeling and Bell appeared. However, Jones did not appear, and no explanation was given for his absence. At the end of December, Meltzer noticed Jones for January 9. Jones did not appear on January 9. This was the third time he did not appear. Altus gave Meltzer no warning or explanation for Jones's failure to appear. In January Meltzer moved for sanctions based on Altus's repeated failure to comply with deposition notices and to honor any of the many extension agreements to produce Jones for deposition.

At the first scheduled hearing of Meltzer's sanctions motion, the attorneys reached a tentative agreement. They agreed on the disposition of the sanctions motion. They also agreed Altus would pay attorney's fees to Meltzer. This agreement also included an understanding that Altus would produce Jones for deposition no later than February 15. Altus did not tender the

agreed attorney's fees to Meltzer. Jones did not appear for deposition.

Meltzer's counsel rescheduled the sanctions hearing for February 20 and notified Altus's counsel. Counsel for both parties appeared. The trial court heard counsels' arguments and granted Meltzer's motion. The court's order struck Altus's pleadings. The court awarded Meltzer $1200 attorney's fees to be paid by Altus no later than February 27. The court also ordered Altus to produce Jones for deposition at a time and date selected by Meltzer.

Altus secured new counsel who moved the court to lift the sanctions. At the hearing on Altus's motion to lift sanctions, its new attorney argued that Jones did not know his deposition was set for January, did not know Meltzer had moved for sanctions for his failure to appear, did not know an agreement existed for him to appear for deposition in February, did not know about the order requiring the payment of attorney's fees, and did not know about the entry of the order striking Altus's pleadings.

Altus's new counsel also argued that Keeling, the officer in direct contact with its original attorney did not know about Jones's January deposition, did not know about rescheduling of the deposition for February, did not know the February 20 hearing was a sanctions hearing, and did not know anything about the entry of the sanctions order until after the fact. After considering the record and counsel's argument, the court denied the motion to lift sanctions and entered a default judgment for Meltzer.

The record shows Jones's unexplained failure to appear on multiple occasions. The record also shows at least four separate agreements by Altus's counsel to produce for deposition and the failure to do so. The record shows Altus was dilatory in responding to discovery requests and violated agreements for production of documents. The record shows the offensive conduct is attributable to both Altus and its counsel. The court had before it Altus's claims its officers and director were un-aware of the matters transpiring between its attorney, Meltzer, and the court.

■■■■■ Multiple violations of the discovery rules and court orders for discovery may be a factor authorizing imposition of sanctions such as striking pleadings and the entry of a default judgment, even when the offending party offers justification and excuses. *See Medical Protective Co. v. Glanz*, 721 S.W.2d 382, 388 (Tex.App.—Corpus Christi 1986, writ ref'd). The Texas Supreme Court has upheld the trial court's actions of striking pleadings and rendering default judgment for failure to produce deponents and documents. *See Vasquez v. Chemical Exch. Indus., Inc.*, 721 S.W.2d 284, 285 (Tex.1986). The sanction of default judgment is available to the trial court for a single instance of failure to attend a deposition rescheduled by agreement after a party's nonappearance at a deposition originally set by notice. *See Plano Sav. & Loan Ass'n v. Slavin*, 721 S.W.2d 282, 283–84 (Tex.1986) (per curiam).

■■■ The trial court as the factfinder is the sole judge of the weight and credibility of the evidence. *See Koslow's*, 796 S.W.2d at 704. It heard the evidence and the argument of counsel. We cannot say, under the record before us, that the trial court's action was without reference to the guiding rules and principles. *See Downer*, 701 S.W.2d at 241–42. Nor can we say that the trial court's act was arbitrary and unreasonable. *See Smithson*, 665 S.W.2d at 443. We hold the record does not show a clear abuse of the trial court's discretion. *TransAmerican*, 811 S.W.2d at 917; *Koslow's*, 796 S.W.2d at 704. We overrule Altus's point of error.

We affirm the trial court's judgment.