### Kenneth and Helen SONGER, Appellants,

v.

### Billy and Mary CLEMENT, d/b/a Cecle Clement & Sons, and Joe Archer, d/b/a Archer Excavating, Appellees.

No. 06–98–00140–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 16, 1999.

Decided May 2, 2000.

Opinion Overruling Rehearing June 9, 2000.

Scott Seamster, Wagstaff, Alvis, Stubbe-man, et al., Abilene, for appellant.

Lisa D. Hull, Richard E. Harrison, Law Offices of Richard E. Harrison, Sherman, for Clements'.

Michael Wynne, Nall, Pelley & Wynne, LLP, Sherman, for Joe Archer.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Kenneth and Helen Songer sued Billy and Mary Clement, d/b/a Cecle Clement & Sons, and Joe Archer, d/b/a Archer Exca-vating, for personal injuries and property damages. The trial court struck the Son-gers' pleadings as a discovery sanction and ordered monetary sanctions against the

Songers.[1] The Songers appeal both the sanction order striking their pleadings and the monetary sanction.

The Songers contend the trial court abused its discretion in

    1.  imposing sanctions based on perjury because the evidence was insufficient to meet the guiding standard,

    2.  entering the sanction order because it prevented the Songers' credibility over a disputed issue from being tested at trial,

    3.  imposing "death penalty" sanctions without first testing lesser available sanctions,

    4.  instituting "death penalty" sanctions as to the Songers' claims for property damage, and

    5.  instituting excessive monetary sanctions.

The Songers filed suit on June 23, 1994, against the Clements and Archer, contending that their operation of a sand mining business was a nuisance and that because of the business the Songers had suffered personal injuries, as well as damages to their property and livestock. Helen Songer contends that she suffers from chronic obstructive pulmonary disease and bronchitis, and Kenneth Songer contends that he suffers from bronchitis. The Songers contend that their health problems were caused or aggravated by the Clements' mining operations. The Songers sought over six million dollars for health-related injuries, diminished earning capacity, mental anguish, and property damages.

Both Songers gave depositions at various times from March 1995 until January 1996. In his deposition, Kenneth Songer stated under oath that he had smoked cigarettes in the 1960s and early 1970s, but that he had not smoked since that time. At the same deposition, he stated that his wife smoked for a few years in the early 1970s, but not since then. Helen Songer testified at her deposition that she had smoked in the early 1970s, but had quit smoking for a while. She testified that she still smoked "socially" or "intermittently, at holidays" for a while, but at the time of her deposition, she did not smoke at all. Helen Songer testified that, at the time of the deposition, she could not recall smoking since the mid–1980s, but possibly might have smoked socially since that time. But she testified unequivocally that she had not smoked, even socially, in the 1990s.

At trial, Kenneth Songer testified as to his and his wife's smoking habits, reiterating that neither one of them currently smoked, or had smoked since, at the latest, some time in the 1980s. The Clements then sought to impeach Kenneth Songer's testimony with medical records and surveillance tapes. The doctor's records were dated November 1991 and showed that Kenneth Songer had reported to the doctor that on that date he was smoking up to two packs of cigarettes a day and had for thirty years. Helen Songer's medical records were dated June 1994 and stated that she had reported smoking one to one and a half packs of cigarettes a day from 1960 to that date. The surveillance tapes taken by the Clements' investigator on April 13–14, 1996 and on May 2–3, 1997 showed both Songers smoking throughout the day.

After this evidence had been presented, the court removed the jury and met with counsel in chambers. The trial court also reviewed deposition testimony of Helen Songer, where she testified about a conversation she and her husband had engaged in about finding a way to stop the Clements' operations before the operations had even begun.

After reviewing the evidence, the trial judge advised the parties that he believed the Songers had committed perjury and

---

**1.**  Archer and the Songers entered into a Rule 11 agreement where Archer dismissed his motion for sanctions and the Songers dismissed their pleadings against him. *See* Tex.R. Civ. P. 11. Therefore, this appeal deals solely with the sanctions requested by the Clements.

aggravated perjury, and directed a verdict against the Songers. The Clements filed two motions for sanctions, and on the Clements' request, the judge set a hearing on the motions. One Motion for Sanctions was based on Tex.R. Civ. P. 13, which addresses claims that are groundless and filed in bad faith; one Motion for Sanctions was based on Tex.R. Civ. P. 215, which addresses discovery abuse.

At the hearing on the Clements' motions, after examining the evidence, the trial court ordered that the Songers' pleadings be stricken and assessed monetary damages of $43,659.00 against them in favor of the Clements. On September 8, 1998, the trial judge held a hearing on the Songers' Motion for New Trial. The trial court granted the Songers a new trial after the directed verdict, but denied them a new trial on their sanctions. The trial court later entered a Final Judgment that dismissed the Songers' case with prejudice.

The Songers appeal both the striking of their pleadings and the monetary sanctions.

The Songers argue that the trial court abused its discretion in imposing "death penalty" sanctions, because doing so prevented the Songers' credibility over a disputed issue from being tested at trial. They contend that the issue of their credibility was a jury issue and that the trial court erred by not allowing the jury to decide if they were lying.

■ In reviewing a trial court's imposition of sanctions, the appellate court makes an independent inquiry of the entire record.[2] We will reverse the trial court's decision only if we find an abuse of discretion.[3] The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles.[4]

The trial court's order granting sanctions, the Final Judgment, the Findings of Fact and Conclusions of Law, and the Supplemental Findings of Fact and Conclusions of Law are all based on sanctions for a violation of Tex.R. Civ. P. 215, which concerns discovery abuse. The order granting sanctions is captioned "Order Granting Sanctions Under Rule 215." In the findings of fact and conclusions of law, the trial court states that the Songers had "engaged in a pattern of discovery abuse," that the Songers' "commission of aggravated perjury during pretrial depositions constitutes discovery abuse sanctionable under Rule 215," that the Songers' live petition should be stricken "as a sanction for the Songers' discovery abuse," that the Songers were directly responsible for the discovery abuse, and that the sanctions serve the purpose of punishing a party that had violated the rules of discovery.

■ We observe that the Clements filed another Motion for Sanctions, premised on Tex.R. Civ. P. 13, concerning groundless pleadings that are filed either in bad faith or to harass another party. The trial judge does not address the Rule 13 motion. When an order of sanctions refers to one specific rule, either by citing the rule, tracking its language, or both, an appellate court is confined to determining whether the sanctions are appropriate under that particular rule. *Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 852 (Tex.App.-Houston [14th Dist.] 1997, no writ). Therefore, we cannot address whether Rule 13 sanctions were appropriate in the present case.

■ Rule 215 concerns discovery abuse in a wide variety of contexts and the sanctions available. Rule 215.3 specifically addresses the situation when the court finds a party is abusing the process in "seeking,

2. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990).

3. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986).

4. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

making, or resisting discovery."[5] After notice to the party and a hearing, the court can impose a broad variety of sanctions.[6]

The Songers rely on *Lanfear v. Blackmon* to support their position on this issue.[7] While *Lanfear* is helpful to a general understanding of an appropriate trial court response to the untruthfulness of a witness at a deposition, there is a case that is more directly on point about "death penalty" sanctions instituted during a trial on the merits. In *Remington Arms Co. v. Caldwell*, the Texas Supreme Court addressed a situation similar to the present case.[8]

In that case, Remington, one of the defendants at the trial, had engaged in a pattern of discovery abuse, including making frivolous and meritless objections to interrogatories; failing to produce requested documents, even after a court order; withholding documents, even after stating that they had all been produced; falsely claiming to have not received notice of a discovery hearing; and various other bad acts.[9] The plaintiff was aware of these abuses, but did not request sanctions before trial. The trial ensued, and the jury found Remington not liable for any of the plaintiff's injuries.[10] After the trial had concluded, the trial court declared a mistrial, then struck Remington's pleadings as a sanction for the pattern of discovery abuse.[11] The Texas Supreme Court held that because the plaintiff was aware of the discovery abuse before the trial began but did not make any objection or request a hearing on the abuse, that the plaintiff waived any claim for sanctions based on discovery abuse.[12]

The plaintiffs in the present case were found by the trial court to have committed perjury at depositions during pretrial discovery. The defendants were fully aware of this contended perjury. One of the videotapes made of the Songers smoking was filmed in April 1996, and the defendants produced it to the plaintiffs in discovery sometime in 1997. The doctors' records that the defendants relied on to directly contradict the Songers' sworn deposition testimony were requested as early as 1994 in the defendants' first request for production, but the defendants did not object before trial, request any kind of hearing on the matter, or request sanctions before the trial began. Instead, the defendants chose to impeach Kenneth Songer's testimony while he was on the stand testifying in his case in chief.

In *Remington Arms*, the Texas Supreme Court held that "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct."[13] In its Supplemental Findings of Fact and Conclusions of Law, the trial court in the present case stated that it had considered *Remington Arms*, but distinguished it based on the word *dispute* in the above quotation from that case. The trial court found that the waiver doctrine only applied when there was a pretrial discovery dispute, not in a case such as this, which it classified as discovery *abuse*.

The sentence following the above quotation from *Remington Arms* is as follows:

Here, of the twelve incidents of misconduct cited in the sanctions order, nine concern pretrial conduct of which Craig

**5.** Tex.R. Civ. P. 215.3 (Vernon 1997).

**6.** *Id.*

**7.** *Lanfear v. Blackmon*, 827 S.W.2d 87 (Tex. App.-Corpus Christi 1992, orig. proceeding [leave denied] ).

**8.** *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167 (Tex.1993).

**9.** *Id.* at 178 n. 4 (opinion on reh'g).

**10.** *Id.* at 169.

**11.** *Id.*

**12.** *Id.* at 170.

**13.** *Id.*

was aware before the trial. We hold that Craig waived any objections to these matters by failing to request a pretrial hearing on the alleged discovery abuse and by requesting a preferential trial setting.[14]

We have found only one case where the alleged pretrial abuse dealt with perjured deposition testimony, but the parties moved for sanctions before trial in that case.[15] But the Texas Supreme Court in *Remington Arms* indicates a broad application of the abuse of discovery rule should be applied. The word *dispute* is used in the context of any remedy being sought on the basis of pretrial discovery abuse. There was a dispute in the present case, inasmuch as the defendant sought to have the pleadings struck on the basis of the alleged pretrial discovery perjury, and the plaintiffs were opposed to having the pleadings struck on that basis. Such is the nature of a dispute.

In *Remington Arms,* the Texas Supreme Court did explicitly state that a trial court is not barred from imposing discovery abuse sanctions against a party during the trial on the merits, when the abuse first comes to light during the trial.[16] However, such is not the case here. The Clements were aware of the contended perjury of the Songers during the pretrial depositions well before the trial commenced in June 1998. The Clements, by not objecting before the trial, filing a motion for sanctions before the trial or requesting any type of hearing on discovery abuse before the trial waived any claims for sanctions against the Songers based on Tex.R. Civ. P. 215. The trial court acted without reference to the guiding rule of law when it awarded Rule 215 sanctions during the trial on the merits.

Because this issue disposes of all issues on appeal, the appellants' remaining points of error will not be addressed. Appellants' point of error number one is sustained.

The trial court's order for dismissal and sanctions is set aside. The case is remanded for a new trial.

## ON REHEARING

On rehearing, the appellees contend that the *Remington Arms Co. v. Caldwell,* 850 S.W.2d 167 (Tex.1993), case is not applicable to the present proceeding because in the present case, the court granted a new trial and reconsidered the sanctions after the granting of the new trial. By this procedure, the appellees contend that the trial court returned the case to a pretrial posture.

In the *Remington Arms* case, the trial court declared a mistrial [17] and then rendered a default judgment against Remington on issues of liability for negligence and gross negligence as well as other sanctions. Both the declaring of a mistrial and the declaring of a new trial had the effect of granting a new trial. The *Remington Arms*'s opinion reflects that the granting of a mistrial, which is analogous to the granting of a new trial, did not put the parties in the position of setting aside a waiver of a claim for sanctions based on pretrial discovery conduct.

In the present case, the appellees had full knowledge of their grounds for sanction prior to the trial of the case. The Supreme Court in *Remington Arms* considered a failure to act on this known conduct prior to the trial as a waiver. We are compelled to follow the court's ruling in *Remington Arms*. A waiver, by its na-

---

14. *Id.*

15. *Fletcher v. Blair,* 874 S.W.2d 83 (Tex.App.-Austin 1994, writ denied).

16. *Remington Arms,* 850 S.W.2d at 170. ("On the other hand, if pretrial discovery abuse is not revealed until after the trial has begun, or even after trial, a party cannot be said to have waived a claim for sanctions.")

17. Justice Doggett in his dissenting opinion states that the trial judge granted a new trial in the *Remington Arms* case, and then in a separate order entered his sanctions.

ture, is a relinquishment of a right. It is not reinstated by a new trial or mistrial.

As to the appellees' contention that they have lost all relief because of this procedural requirement, the court would point out TEX.R. CIV. P. 215 is one limited area of possible relief for perjury. We have not held that this discovery remedy precludes other possible remedies for perjury.

The motion for rehearing is overruled.