**Opinion filed January 9, 2020**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-17-00365-CV**

_____

**JESUS MUNOZ AND RANDY MUNOZ, Appellants**

**V.**

**KENNETH WILLIAM KUETHE, JR., Appellee**

**On Appeal from the County Court at Law**
**Ector County, Texas**
**Trial Court Cause No. CC-26450**

## M E M O R A N D U M   O P I N I O N

Jesus Munoz and Randy Munoz appeal from an order in which the trial court assessed death-penalty sanctions against them as a result of their violating a pretrial order. The trial court struck Appellants' pleadings and exhibits; dismissed their lawsuit against Appellee, Kenneth William Kuethe, Jr.; and rendered default judgment for Appellee. Appellants subsequently filed a motion for new trial, and the trial court denied it. We reverse and remand.

On appeal, Appellants contend that the trial court abused its discretion when it struck their pleadings and exhibits, rendered default judgment for Appellee, and subsequently denied their motion for new trial.

The underlying negligence action arose out of a motor vehicle accident. Appellants filed suit and alleged that Appellee failed to yield the right-of-way at an intersection and that Appellants were injured in the resulting collision. Jesus Munoz filed his original petition in Ector County on May 4, 2015, and Randy Munoz joined in the first amended petition, which was filed on November 23, 2015.

In November 2016, the trial court first set the case for trial on January 10, 2017. However, due to a special setting in another case, Appellee's counsel sought to continue that setting to April or May 2017. Appellants did not oppose Appellee's motion, and the trial court postponed the trial until May 2017.

On December 28, 2016, the trial court entered its "Scheduling Order/Level III Discovery Control Plan" and set a new trial date for May 2, 2017, and a pretrial exchange deadline of Friday, April 14, 2017. Pursuant to the trial court's order, counsel for each party was to provide opposing counsel with requested jury charges, motions in limine, exhibit lists, copies of all marked exhibits to be offered at trial, deposition excerpts, and all other pretrial matters. Appellee's counsel met the pretrial exchange deadline, but Appellants' counsel did not.

On Monday, April 17, 2017, the trial court held a pretrial hearing. Immediately prior to the hearing, local counsel for Appellants provided various pretrial exchange documents to Appellee's counsel. Under the trial court's order, the documents were late; Appellants' counsel should have filed pretrial documents the Friday before the hearing. Moreover, the late-filed documents were incomplete. For instance, Appellants' exhibit list was among those documents furnished, but marked and tagged copies of Appellants' exhibits were not. The trial court reset the

hearing because Appellants' lead attorney did not appear for the hearing and Appellants' local counsel was unprepared to proceed with the hearing. The trial court reset the hearing for April 26, 2017, and instructed Appellants' local counsel that the attorney who had the authority to argue pretrial matters needed to be present at the rescheduled hearing. No mention was made at the hearing that Appellants' counsel had not produced copies of Appellants' proposed exhibits as previously ordered by the trial court.

On April 25, 2017, one day prior to the rescheduled pretrial hearing, Appellants' lead attorney filed a motion for continuance of the May 2 setting. In the motion, lead counsel stated that counsel was scheduled to appear for trial in another case that had been specially set to begin on May 1, 2017, in Dallas. Appellants' lead counsel also said in the motion that counsel had to attend a hearing in that cause on April 26, 2017, the same day as the rescheduled pretrial hearing in this case.

On April 26, 2017, the trial court held a hearing on Appellants' motion for continuance. At the hearing, Appellee's counsel strongly objected to a continuance. Appellee's counsel further urged that any continuance be limited solely to the trial date, that the scheduling order deadlines remain intact, and that the trial court disallow the addition of "any new exhibits" or filings. The trial court granted the continuance "on the trial only" and stated that "discovery, according to the order, ha[d] now closed." The trial court emphasized that it would not permit any attempts to submit additional items that had not been furnished in accordance with the scheduling order deadlines.

The trial court reset the case for trial on November 14, 2017, and the pretrial hearing for November 9, 2017. Counsel for Appellee and local counsel for Appellants appeared at the November 9 hearing. Once again, lead counsel for Appellants did not show up for the hearing.

At the outset of the November 9 pretrial hearing, Appellee's counsel referred to the continuance that the trial court granted for Appellants in April. Appellee's counsel stated that he believed that lead counsel for Appellants had lied and made misrepresentations to the court in connection with the motion for continuance. Appellee's counsel then informed the trial court that Appellants' counsel had yet to fully comply with the pretrial order and produce copies of Appellants' exhibits. Appellee had not filed a motion for sanctions but requested that the trial court strike Appellants' exhibits and pleadings and render default judgment for Appellee. The trial court granted the request.

On November 24, 2017, the trial court held a hearing on Appellants' motion for reconsideration and for new trial. This time, both lead and local counsel for Appellants attended the hearing. Appellants' lead counsel explained that he had filed a motion for continuance in the Dallas case, the setting for which was the basis for the April motion for continuance filed in the present case, not anticipating that the Dallas continuance would be granted. The Dallas court initially denied the continuance, and by the time it was eventually granted, the trial court in the present case had already granted Appellants' continuance. Appellants' counsel urged the trial court to reconsider its decision to strike the pleadings based on counsel's mistakes and to consider the exclusion of Appellants' exhibits as a lesser sanction. The trial court denied Appellants' motion.

We review a trial court's order in which it imposes sanctions and a trial court's ruling on a motion for new trial for abuse of discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990). We will first consider whether the trial court abused its discretion when it imposed death-penalty sanctions against Appellants.

The sanctions imposed by the trial court "are the most devastating a trial court can assess against a party." *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d

4

913, 917–18 (Tex. 1991). In effect, a death-penalty sanction adjudicates a party's claims without regard to the merits. *Id.* at 918. These case-determinative sanctions may be imposed only in "'exceptional cases' where they are 'clearly justified' and it is 'fully apparent that no lesser sanctions would promote compliance with the rules.'" *Cire v. Cummings*, 134 S.W.3d 835, 840–41 (Tex. 2004) (quoting *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993)). Thus, while sanctions can promote the orderly conduct of its proceedings by securing compliance and deterring noncompliance with court orders, a trial court should avoid a "trial by sanctions" whenever possible. *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 575 (Tex. 2018) (quoting *TransAmerican*, 811 S.W.2d at 918).

Under Rule 166, a trial court has implicit power to impose sanctions for violations of its pretrial orders. *Koslow's*, 796 S.W.2d at 703; *see* Tex. R. Civ. P. 166. Additionally, Rule 215 provides a trial court with the express power to sanction for discovery abuses. *See* Tex. R. Civ. P. 215. However, sanctions ordered under either rule must be "appropriate" to the circumstances of the case. *Koslow's*, 796 S.W.2d at 703 n.1. Although whether to impose an available sanction is left to the sound discretion of the trial court, a trial court abuses its discretion when it acts without reference to guiding rules and principles or when it acts arbitrarily and unreasonably under all the circumstances of the particular case. *Id.* at 703.

In *TransAmerican*, the Texas Supreme Court established a two-part standard to be used in a determination of whether an imposition of sanctions is just. *See TransAmerican*, 811 S.W.2d at 917. There must be a direct relationship between the offensive conduct and the sanction imposed, and the sanction must not be excessive. *Id.*

Appellee maintains that the sanctions standard introduced in *TransAmerican* does not apply to this case. Because that case involved discovery sanctions ordered

5

under Rule 215, Appellee asserts that *TransAmerican* does not and should not apply to sanctions for violations of a pretrial order under Rule 166. We cannot agree.

In *Koslow's*, the Texas Supreme Court held that the same standard for the imposition of sanctions under Rule 215 governed sanctions ordered under Rule 166 for violations of a pretrial order. *Koslow's*, 796 S.W.2d at 703 n.1. (holding that the 1990 amendment to Rule 215 expressly requiring that sanctions be "appropriate" constituted a codification of the "pre-existing standards for review of sanctions orders on appeal" and, thus, that sanctions ordered under Rule 166 "must likewise be 'appropriate'"). Subsequently, the court in *TransAmerican* developed two standards for determining whether an imposition of sanctions is just and appropriate under Rule 215. *TransAmerican*, 811 S.W.2d at 916 n.4, 917 (holding that, under the language of Rule 215, whether an imposition of sanctions is "just" is equivalent to the pre-existing requirement that sanctions be "appropriate") (citing *Koslow's*, 796 S.W.2d at 703 n.1). The Texas Supreme Court has recently applied the *TransAmerican* standards outside of Rule 215 to a case in which the trial court had imposed sanctions pursuant to its inherent authority to sanction. *See Altesse Healthcare Sols.*, 540 S.W.3d at 574–75 (holding that *TransAmerican* applied to sanctions imposed for violations of a temporary restraining order).

Thus, to be appropriate, sanctions ordered under Rule 166 must bear a direct relationship to the offensive conduct and must not be excessive. *See Taylor v. Taylor*, 254 S.W.3d 527, 532 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (recognizing that trial court's discretion in imposing sanctions under Rule 166 is limited by the standards set out in *TransAmerican*); *In re Patton*, 47 S.W.3d 825, 827 (Tex. App.—Fort Worth 2001, no pet.); *Wal-Mart Stores, Inc. v. Butler*, 41 S.W.3d 816, 818 (Tex. App.—Dallas 2001, no pet.); *In re Beldsoe*, 41 S.W.3d 807, 812 (Tex. App.—Fort Worth 2001, no pet.).

Appellants contend that the trial court abused its discretion because the sanctions did not directly relate to counsel's failure to exchange exhibits and to attend the pretrial hearings and because death-penalty sanctions were excessive. We agree.

First, for a direct relationship to exist between the offensive conduct and the sanction imposed, the "sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *TransAmerican*, 811 S.W.2d at 917. Furthermore, to relate directly to the abuse found, the sanctions should be visited upon the offender. *Id.* Although attorneys cannot shield their clients from sanctions, a trial court should not punish a party for counsel's conduct in which the party is not implicated. *Id.*

Here, Appellants' counsel failed to comply fully with the trial court's pretrial exchange deadline. Counsel for Appellants produced all pretrial exchange items late—except for the copies of their tagged and marked exhibits, which were not produced to Appellee's counsel. Regarding the late items given to Appellee's counsel at the first pretrial hearing, the trial court noted that "[d]iscovery was a tad bit late. . . . Not catastrophic, but a tad bit late." Then, at the continuance hearing in April 2017, the trial court told Appellants' counsel that Appellants' "exhibits needed to be marked. I expect those to be done. . . . So whatever is in that discovery and whatever was beforehand and whatever you were furnished, that completed it. That's all the exhibits that are going to exist in this case. In other words, that portion is closed." Yet, by November 2017, Appellants' counsel still had not exchanged Appellants' marked and tagged exhibits with counsel for Appellee.

Nothing in the record suggests that counsel's failure to comply with the trial court's orders was attributable to Appellants, nor is there any suggestion that the trial court determined that Appellants should be faulted for the offensive conduct. In fact,

at the hearing on Appellants' motion for reconsideration, the trial court expressly stated that it did not want to punish Jesus Munoz or Randy Munoz. Further, we do not find that striking Appellants' pleadings and exhibits bears a direct relationship to counsel's failure to exchange their marked and tagged trial exhibits. The expired discovery deadlines had circumscribed the potential exhibits that could exist in this case. Any prejudice to Appellee could have been remedied without the extraordinary remedy of death-penalty sanctions in the first instance.

Second, a sanction must not be excessive: "The punishment should fit the crime." *TransAmerican*, 811 S.W.2d at 917. Before imposing death-penalty sanctions, a trial court is required to consider the availability of lesser sanctions and, "in all but the *most exceptional* cases, actually test the lesser sanctions before striking the pleadings." *Cire*, 134 S.W.3d at 840–41 (emphasis added). The purpose of this requirement is to consider whether lesser sanctions would promote compliance. *TransAmerican*, 811 S.W.2d at 917 (holding that "courts *must* consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance"(emphasis added)); *see also Taylor*, 254 S.W.3d at 533; *In re Patton*, 47 S.W.3d at 827.

Here, the trial court did not test lesser sanctions before it struck Appellants' pleadings. Rather, the trial court imposed death-penalty sanctions in the first instance, upon an oral request by Appellee's counsel, at a hearing set on pretrial matters. Subsequently, Appellee's counsel asked the trial court to take notice of Appellee's attorney's fees incurred in counsel's traveling to Ector County from Lubbock to attend these hearings. In testifying as to those costs, Appellee's counsel made it clear that he was not seeking an award of attorney's fees and expenses; rather, he offered this testimony "to support the Court's order for the death-penalty sanctions that . . . the Court is prepared and announced that [it] is going to render in

8

this case." Indeed, the trial court could have assessed attorney's fees against Appellants' counsel or limited its sanctions order to striking Appellants' exhibits.

Appellee points to the trial court's final order striking Appellants' exhibits and pleadings and asserts that the trial court did consider lesser, alternative sanctions. However, this is not that "exceptional case" where it is clear that no lesser sanction would promote compliance with the trial court's orders. *See Cire*, 134 S.W.3d at 842 (holding that case was exceptional and trial court was not required to test lesser sanctions where the sanctions order stated that less stringent sanctions would not be effective due to the party's concealing or destroying evidence and party's testimony that she had no money to pay monetary sanctions). Nothing in the record or the trial court's order suggests that lesser sanctions would not have been effective.

Accordingly, we hold that the trial court abused its discretion when it struck Appellants' pleadings and exhibits, rendered default judgment for Appellee, and denied Appellants' motion for new trial. We sustain Appellants' issue on appeal.

We understand and appreciate the frustration experienced by the trial court in this case when it sought to control the orderly progression of its docket and when that very legitimate goal was thwarted. There are other avenues open to the trial court in that regard.

Because the trial court erred when it assessed death-penalty sanctions against Appellants, we need not address Appellants' argument that the sanctions violated their due process right to notice of a sanctions hearing. TEX. R. APP. P. 47.1.

We think that the record is clear that Appellants' lead counsel's conduct was the catalyst that brought about the trial court's entry of the death-penalty sanctions. We also note that Appellee was the party that asked for the sanctions. We are of the opinion, therefore, that good cause exists to tax appellate costs one-half against Appellants and one-half against Appellee. *See* TEX. R. APP. P. 43.4.

We reverse the judgment of the trial court and remand the cause for further proceedings.

JIM R. WRIGHT

SENIOR CHIEF JUSTICE

January 9, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.